BARBARA J. PARKER, City Attorney - SBN 069722
OTIS McGEE, JR. Chief Asst. City Attorney – SBN 71885
MARIA BEE, Supervising Attorney - SBN 167716
JENNIFER N. LOGUE, Deputy City Attorney - SBN 241910
One Frank H. Ogawa Plaza, 6th Floor
Oakland, California 94612
Telephone: (510) 238-3589
Fax:  (510) 238-6500
29892:1644319

VILLARREAL HUTNER PC
Ross Boughton, ESQ., Cal. Bar No. 241119
David Lucero, ESQ., Cal. Bar No. 253300
575 Market Street, Suite 1700
San Francisco, California 94105
Telephone: (415) 543-4200
Facsimile: (415) 512-7674

Attorneys for Defendants
CITY OF OAKLAND, and
DEANNA SANTANA

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

DARYELLE LAWANNA PRESTON,

       Plaintiffs,

    v.

CITY OF OAKLAND; DEANNA SANTANA, in her individual capacity; and DOES 1-10, inclusive,

       Defendants.

Case No.  C14-02022 NC

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

Date:     July 1, 2015
Time:    1:00 p.m.
Location:  Courtroom 7, 4th Floor
          280 South 1st Street
          San Jose, CA

The Honorable Nathanael M. Cousins

# TABLE OF CONTENTS

Page No.(s)

I.   INTRODUCTION ........................................................................................ 2

II.  STATEMENT OF FACTS........................................................................... 2

A. Background ........................................................................................... 2

B. Allegations of Plaintiff's Verified Complaint ....................................... 3

C. The East Oakland Rainbow Teen Center Report .................................. 4

D. Plaintiff's Allegedly Contradictory Statement at the March 6, 2012 City Council Meeting................................................................................ 5

E. The Tentative Agreement with International Association of Firefighters Union, Local 55.................................................................................... 6

F. The Alleged Statement about not Collecting Union Dues and the Union's Subsequent Grievance ........................................................................ 7

III. LEGAL ARGUMENT ................................................................................. 9

A. Plaintiff's First Amendment Retaliation Claim Fails as a Matter of Law because Plaintiff was not Acting or Speaking as a Private Citizen when she engaged in any of the Conduct Described in her Verified Complaint .............. 9

1. The Rainbow Teen Center report.................................................. 10

2. The allegedly contradictory statement at the open session city council meeting ...................................................................................... 12

3. The Tentative Agreement between Oakland Fire Department and Local 55.................................................................................................... 13

4. The non-collection of union dues and SEIU's subsequent grievance............ 14

B. Plaintiff's California Labor Code Claim fails in part because Plaintiff did not Disclose or Refuse to Participate in Violations of State or Federal Law...... 16

1. The Rainbow Teen Center Report ................................................ 18

2. Plaintiff's alleged contradiction of Deanna Santana ...................... 18

3. The Tentative Agreement between Oakland Fire Department and Local 55.................................................................................................... 19

4. Katano Kasaine's alleged interference with the investigation of SEIU's grievance ............................................................................................ 19

5. Plaintiff's statement about the SEIU grievance at closed session ................ 19

C. Plaintiff has not and cannot State a Retaliation Claim under the First Amendment or California Labor Code 1102.5 based on her alleged Contradiction of Deanna Santana at the March 6, 2012 City Council Meeting because there is no Evidence that Ms. Santana had Knowledge of any Contradiction. ............................................................................................. 20

D. Plaintiff has not and cannot State a Retaliation Claim under the First Amendment or California Labor Code Section 1102.5 based on her Report of Katano Kasaine's alleged Statement about not Collecting Union Dues or Ms. Kasaine's alleged Interference with the Investigation of the Union's Subsequent Grievance because Indisputable Evidence shows that Ms. Santana's Decision to Terminate Plaintiff's Employment with the City was made before the Union Dues Issue Arose. ......................................................... 21

E. Plaintiff would have been Terminated even in the Absence of her Alleged Protected Conduct. ............................................................................................. 22

IV. CONCLUSION ..................................................................................................... .24

1

## <u>TABLE OF AUTHORITIES</u>

2

Page No.(s)

3

### U.S. SUPREME COURT CASES

4

*Garcettia v. Ceballos,*
5
   547 U.S. 410, 421 (2006) ........................................................................ 9,10,13,15

6
                              16, 20

7

### NINTH CIRCUIT CASES

8

*Cohen v. Fred Meyer, Inc.,*
   686 F.2d  793, 796  (9th Cir. 1982) ........................................................................... 21

9

10
*Dahlia v. Rodriguez,*
   735 F.3d  1060, 1067  (9th Cir. 2013) ..................................................................... 9,10

11

12
*Eng v.Cooley,*
   552 F.3d 1062, 1071 (9th Cir. 2009) .............................................................. 9, 20,21,22

13
*Hagen v. City of Eugene,*
   736 F.3d  1251 (9th Cir. 2013) .................................................................................. 9

14

15
*Hupert v. City of Pittsburg,*
   574 F.3d  696, 704(9th Cir. 2009) ........................................................................ 10,13

16
*Pratt v. Rowland*
   65 F. 3d 802, 808 (9th Cir. 1995) ........................................................................... 21

17

18

### CALIFORNIA CASES

19
*Edgerly  v. City of Oakland,*
   211 Cal. App. 4th 1191(2012) ............................................................................. 16, 19

20

21
*McClung v. Employment Dev. Dep't,*
   34 Cal. 4th 467, 471-75 (2004) ............................................................................... 16

22
*Mokler v. Cnty of Orange,*
   157 Cal. App. 4th 121,138 (2007) ............................................................................ 22

23
*Morgan v. Regents of Univ. of Cal.,*
   88 Cal. App. 4th 52, 69 (2000) ........................................................................... 20, 21

24

25
*Mueller v. County of Los Angeles,*
   176 Cal. App. 4th 809, 821-822 (2009) .................................................................... 17

26

27

28

DEFENDANT'S NOTICE OF MOTION AND MOTION
FOR SUMMARY JUDGMENT

C14-02022 NC

1

**CALIFORNIA STATUTES**

2

CAL. GOVT. CODE § 3506 ............................................................................................... 19

3

CAL. LAB. CODE §§ 1102.5 (2004 - 2013) ...................................................................... 16

CAL. LAB. CODE §§ 1102.5 (2014) ........................................................................... 16,17

4

CAL. LAB. CODE § 1720.4 (2012) ................................................................................... 17

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S NOTICE OF MOTION AND MOTION
FOR SUMMARY JUDGMENT

C14-02022 NC

**TO PLAINTIFF AND HER COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on <u>**July 1, 2015 at 1:00 p.m.**</u> before the Honorable Nathanael M. Cousins, in Courtroom 7, 4th Floor, 280 South 1st Street, San Jose, California Defendants CITY OF OAKLAND and DEANNA SANTANA will and hereby do move this Court for summary judgment as to Plaintiff's Complaint for damages or in the alternative for partial summary judgment as to one or more of Plaintiff's claims as specifically set forth below.

This motion is made on the following grounds:

A. Plaintiff's First Amendment retaliation claim fails as a matter of law because Plaintiff was not acting or speaking as a private citizen when she engaged in any of the conduct described in her verified complaint;

B. Plaintiff's California Labor Code claim fails in part because Plaintiff did not disclose or refuse to participate in violations of state or federal law;

C. Plaintiff has not and cannot state a retaliation claim under the First Amendment or California Labor Code section 1102.5 based on her alleged contradiction of Deanna Santana at the March 6, 2012 city council meeting because there is no evidence that Ms. Santana had knowledge of any contradictory statement by Plaintiff;

D. Plaintiff has not and cannot state a retaliation claim under the First Amendment or California Labor Code section 1102.5 based on her report of Katano Kasaine's alleged statement about not collecting union dues or Ms. Kasaine's alleged interference with the investigation of the union's subsequent grievance because indisputable evidence shows that Ms. Santana's decision to terminate Plaintiff's employment with the City was made before the union dues issue arose; and

E. Plaintiff would have been terminated even in the absence of her alleged protected conduct.

This motion is based upon this Notice and Motion, the Memorandum of Points and Authorities, the accompanying declarations and supporting evidence, the complete files of this case and upon such other matters as may be presented to the Court at the time of the hearing.

1

# I.   INTRODUCTION

Plaintiff, Daryelle LaWanna Preston ("Plaintiff") filed a verified complaint against the City of Oakland ("City") and former City Administrator, Deanna Santana (collectively "Defendants") alleging retaliation claims under the First Amendment and California Labor Code section 1102.5.  Many of the material averments in Plaintiff's verified complaint are directly refuted by the evidence in this case and Plaintiff's claims of retaliation are nevertheless legally flawed.  Accordingly, Defendants' motion for summary judgment or, in the alternative, partial summary judgment should be granted.

## II. STATEMENT OF FACTS

**A.     Background**

In July 2007, Plaintiff was hired by the City of Oakland as a Human Resources Manager. (Declaration of Dianne Langill in support of Motion for Summary Judgment or, in the alternative, Partial Summary Judgment ("Langill Decl.") ¶ 6.)   In January 2012, Plaintiff was promoted to Employee Relations Director by then Oakland City Administrator, Deanna Santana.  (Langill Decl. ¶ 6; Declaration of Otis McGee in support of Motion for Summary Judgment or, in the alternative, Partial Summary Judgment ("McGee Decl."), Ex. A, Preston Dep., vol. I, 39:11-18, March 17, 2015.)  As Employee Relations Director, Plaintiff reported directly to Ms. Santana. (McGee Decl., Ex. A, Preston Dep., vol. I, 39:24 – 40:1, March 17, 2015.)  Plaintiff served as the Employee Relations Director until her employment with the City of Oakland was terminated by Ms. Santana on October 3, 2013.  (McGee Decl., Ex. C, Santana Dep., vol. I, 40:21 – 24, March 18, 2015.)

On March 17, 2014, Plaintiff filed a verified complaint for damages and injunctive relief in Alameda County Superior Court against the City of Oakland and Deanna Santana arising from the termination of her employment with the City of Oakland.  (Defendants' Request for Judicial Notice in Support of Motion for Summary Judgment or, in the alternative, Partial Summary Judgment ("RJN"), Ex. A (Verified Complaint).)  Plaintiff's complaint alleges two causes of action: 1) Violation of California Labor Code section 1102.5; and 2) Violation of Free Speech

Rights.  *Id.*  Plaintiff's Labor Code section 1102.5 is asserted against the City of Oakland and Plaintiff's Free Speech claim is asserted against Ms. Santana in her individual capacity.  *Id.*  On May 2, 2014, Plaintiff's action against the City and Ms. Santana was removed to federal court.

**B.      Allegations of Plaintiff's Verified Complaint**

Plaintiff contends that she was retaliated against for reporting various violations of state and local law to Ms. Santana and for refusing to participate in unethical and unlawful conduct. (RJN, Ex. A, Compl. ¶¶ 1, 7-8.)  Specifically, Plaintiff alleges that she was retaliated against for:

1. Refusing to "sign off on" a written report about the East Oakland Rainbow Teen Center ("RTC") that stated City Councilmember Desley Brooks intentionally and knowingly engaged in hiring and purchasing for the RTC that violated City of Oakland Charter section 218 (RJN, Ex. A, Compl. ¶¶ 2, 18-19);

2. Refusing to confirm during an open session city council meeting that Councilmember Brooks attended a meeting during which Ms. Santana explained the problems with the hiring for the RTC and publically contradicting Ms. Santana, at that same open session city council meeting, by stating "Desley Brooks was not present at that meeting, nor did we give Ms. Brooks any information about this hiring issue" (RJN, Ex. A, Compl. ¶¶ 2, 20);

3. Reporting that Fire Chief Teresa Reed signed a tentative agreement with International Association of Firefighters Union, Local 55 without City Manager representation or City Council approval (RJN, Ex. A, Compl. ¶¶ 3-4, 21-25);

4. Reporting that City Treasurer, Katano Kasaine, stated she had not been collecting union dues from part-time employees during a meeting with the Service Employees International Union ("SEIU") negotiating team, which resulted in the filing of a grievance against the City and Ms. Kasaine by SEIU (RJN, Ex. A, Compl. ¶¶ 5, 26-35);

DEFENDANTS' NOTICE OF MOTION AND MOTION                                    C14-02022 NC
FOR SUMMARY JUDGMENT

5. Reporting that Ms. Kasaine was interfering with the investigation of the SEIU grievance by contacting SEIU president Dwight McElroy (RJN, Ex. A, Compl. ¶ 6, 37-38); and

6. Informing City Council of the grievance filed by SEIU during a closed-session council meeting in contravention of Ms. Santana's order not to do so. (RJN, Ex. A, Compl. ¶ 40.)

**C.    The East Oakland Rainbow Teen Center Report**

Plaintiff and her colleague, Fred Blackwell, were tasked with overseeing the issuance of a report concerning various issues involving the East Oakland Rainbow Teen Center ("RTC"). (McGee Decl., Ex. A, Preston Dep., vol. I, 53:9-12, March 17, 2015.) The process of drafting the RTC report took a "very long time" and the report went through "many, many" drafts. (McGee Decl., Ex. B, Preston Dep., vol. II, 177:1-4, April 29, 2015.) Reports of this nature are reviewed and edited by several people including but not limited to the City Administrator, the City Attorney and other relevant management staff. (McGee Decl., Ex. A, Preston Dep., vol. I, 71:20 – 72:5, March 17, 2015.)

At some point during the processing of the subject RTC report, Oakland City Attorney, Barbara Parker, edited the report to include language stating that "we would recommend [referring City Councilmember Desley Brooks] to the Oakland DA for violating Charter section 218". (McGee Decl., Ex. B, Preston Dep., vol. II, 177:4-10, April 29, 2015.) Plaintiff informed Ms. Santana that she would not sign a report that included any language about Councilmember Brooks violating Charter section 218 or being referred to the Oakland DA for any such violation. (McGee Decl., Ex. B, Preston Dep., vol. II, 177:4-13, April 29, 2015.)

Ms. Santana also had concerns about including language in the RTC report about Councilmember Brooks violating Charter section 218 because she was not sure she had the authority to declare that a violation of the Charter had occurred or that it was her role as City Administrator to do so. (McGee Decl., Ex. D, Santana Dep., vol. II, 133:1-16, 134:3-11, March 23, 2015.) After discussing the matter with Barbara Parker, Fred Blackwell and Plaintiff, Ms.

1   Santana decided that it was not her job nor did she have the authority to declare whether a

2   violation of the City Charter has occurred.  *Id.*

3          Plaintiff prepared the final RTC report.  (McGee Decl., Ex. A, Preston Dep., vol. I, 74:12-

4   13, March 17, 2015.)  The final RTC report did not include any language about Councilmember

5   Brooks violating Charter section 218.  (McGee Decl., Ex. A, Preston Dep., vol. I, 74:2-8, March

6   17, 2015; McGee Decl., Ex. B, Preston Dep., vol. II, 178:16-23, April 29, 2015.)

7   **D.**     **Plaintiff's Allegedly Contradictory Statement at the March 6, 2012 City Council
            Meeting**

8

9          Plaintiff and Ms. Santana attended the March 6, 2012 Oakland City Council meeting.  At

10  some point during this City Council meeting, an issue arose regarding whether Councilmember

11  Brooks had been informed of certain staffing assignments for the Rainbow Teen Center.  (McGee

12  Decl., Ex. A, Preston Dep., vol. I, 118:2-9, March 17, 2015.)

13         Plaintiff states that Ms. Santana and Councilmember Brooks disagreed about whether

14  Councilmember Brooks had been provided certain information about staffing assignments.  *Id.*

15  Plaintiff states further that when Ms. Santana asked Plaintiff to come to the "mic" to confirm that

16  Councilmember Brooks had in fact been provided the information, Plaintiff contradicted Ms.

17  Santana by stating that Councilmember Brooks had not been provided the information.  (McGee

18  Decl., Ex. A, Preston Dep., vol. I, 118:14-119:2, March 17, 2015.)

19         The night of the March 6th City Council meeting, Plaintiff sent an email to Ms. Santana

20  apologizing for having to contradict Ms. Santana at the meeting.  (McGee Decl., Ex. A, Preston

21  Dep., vol. I, 119:7-12; 122:2-10, Ex. 4, March 17, 2015.)  In response, Ms. Santana expressed

22  confusion about Plaintiff's concern, stated that Plaintiff did not contradict her and explained that

23  she agreed with Plaintiff when Plaintiff commented on the "Director."  (McGee Decl., Ex. A,

24  Preston Dep., vol. I, 122:11-123:1, Ex. 4, March 17, 2015.)  Plaintiff then attempted to clarify her

25  concern by stating in a subsequent email that she was referring to the comment about "having the

26  Director of the Rainbow rec center manage both sites" and explaining that the discussion about

27  the director managing both sites was with "Audree" not "Brooks."  (McGee Decl., Ex. A, Preston

28  Dep., vol. I, 123:8-20, Ex. 4, March 17, 2015.)  Ms. Santana responded "right and I agreed w u . .

5

." (McGee Decl., Ex. A, Preston Dep., vol. I, 123:21-124:22, Ex. 4, March 17, 2015.)

The email exchange between Plaintiff and Ms. Santana on the night of March 6, 2012 was the one and only discussion Plaintiff and Ms. Santana had about Plaintiff's belief that she contradicted Ms. Santana at the March 6th city council meeting. (McGee Decl., Ex. B, Preston Dep., vol. II, 174:2-17, 175:3-11, April 29, 2015.) Plaintiff did not consider Ms. Santana's emails on this issue to be retaliatory or hostile in any way. (McGee Decl., Ex. A, Preston Dep., vol. I, 123:2-7, March 17, 2015.)

To date, Ms. Santana does not believe that Plaintiff contradicted her at the March 6, 2012 city council meeting and any belief to the contrary that Plaintiff may have is due to a misunderstanding and confusion of two separate issues. (McGee Decl., Ex. D, Santana Dep., vol. II, 142:23-147:21, March 23, 2015.)

**E.     The Tentative Agreement with International Association of Firefighters Union, Local 55.**

A "meet-and-confer" is a process an employer engages in with "organized labor" over a mandatory subject of bargaining in order to reach an agreement on terms and conditions. (McGee Decl., Ex. A, Preston Dep., vol. I, 80:25-81:3, March 17, 2015.) According to Plaintiff, City of Oakland policy and procedure requires any City representative who intends to engage in a meet-and-confer with "organized labor" to obtain City Council authorization to engage in the meet-and-confer and City Council approval of any proposals to be made on behalf of the City during the meet-and confer before commencement of any meet-and-confer sessions. (McGee Decl., Ex. A, Preston Dep., vol. I, 83:15-18; 84:21-85:4, March 17, 2015.)

In June 2013, the Oakland Fire Department ("OFD") engaged in a meet-and-confer with the International Association of Firefighters Union, Local 55 ("Local 55") about extending a Paramedic Support Program. (Declaration of Maria Bee in support of Defendant's Motion for Summary Judgment or, in the alternative, Partial Summary Judgment ("Bee Decl."), Ex. A, Reed Dep.,18:20-19:5, 20:14-23, Ex. 2, March 20, 2015.) As a result of the meet-and-confer, OFD and Local 55 agreed to extend the Paramedic Support Program for an additional 30 days. (Bee Decl., Ex. A, Reed Dep., 18:20-19:5, Ex. 2, March 20, 2015.) A formal agreement reflecting the 30-day

6

extension was prepared and signed by Oakland Fire Chief, Teresa Reed, among others, on or around June 28, 2013.  (Bee Decl., Ex. A, Reed Dep.,18:20-19:5, Ex. 2, March 20, 2015.) City Council authorization and approval had not been obtained before the Tentative Agreement was negotiated and signed.[1] (Bee Decl., Ex. A, Reed Dep., 22:22-25, March 20, 2015.)

Plaintiff learned that OFD and Local 55 had entered into this Tentative Agreement concerning the Paramedic Support Program in violation of the City's procedures requiring prior City Council approval and reported the same to her supervisor, Deanna Santana.  (McGee Decl., Ex. A, Preston Dep., vol. I, 88:10-15, March 17, 2015; McGee Decl., Ex. C, Santana Dep., vol. I, 81:18-82:10, March 18, 2015.)  Plaintiff also informed Chief Reed that it was improper for her to have negotiated and signed the Tentative Agreement without City Council authorization and the only way to fix the problem was to get Council authorization.  (McGee Decl., Ex. A, Preston Dep., vol. I, 86:4-87:3, March 17, 2015.)

The Tentative Agreement was presented to City Council in a Special Closed Session meeting on July 10, 2013 (Declaration of Deanna Santana in support of Motion for Summary Judgment or, in the alternative, Partial Summary Judgment ("Santana Decl.") at ¶ 7.)  On that same date, Council approved the Tentative Agreement retroactively.  (Santana Decl. at ¶ 8; McGee Decl., Ex. A, Preston Dep., vol. I, 87:6-7, March 17, 2015; McGee Decl., Ex. C, Santana Dep., vol. I, 82:6-20, March 18, 2015.)

**F.     The Alleged Statement about not Collecting Union Dues and the Union's Subsequent Grievance.**

On or around August 6, 2013, City Treasurer, Katano Kasaine, attended a meeting with the Service Employees International Union's ("SEIU") negotiating team.  (RJN, Ex. A, Compl. ¶ 26; McGee Decl., Ex. A, Preston Dep., vol. I, 93:16-22, March 17, 2015.)  At this August 6th meeting, Ms. Kasaine allegedly stated that she had not been deducting union dues from part-time employees for several years.  (Compl. ¶ 26; McGee Decl., Ex. A, Preston Dep., vol. I, 94:14-95:1,

---

[1]     Plaintiff states that this was the second time Chief Reed signed a tentative agreement without first obtaining City Council approval; however, Plaintiff does not remember any details about the "first time".  (McGee Decl., Ex. A, Preston Dep., vol. I, 84:6-8, 85:10-86:3, March 17, 2015.)

DEFENDANTS' NOTICE OF MOTION AND MOTION                              C14-02022 NC
FOR SUMMARY JUDGMENT

1    March 17, 2015.)  Plaintiff did not attend the August 6th meeting and, therefore, has no personal

2    knowledge of Ms. Kasaine's alleged statement about not collecting dues.  (McGee Decl., Ex. A,

3    Preston Dep., vol. I, 93:23-94:1, March 17, 2015.)  Plaintiff learned about Ms. Kasaine's alleged

4    statement from City employees, Winnie Anderson and Sonia Lara.  (McGee Decl., Ex. A, Preston

5    Dep., vol. I, 93:16-95:1, March 17, 2015.)  Sometime after her meeting with Ms. Anderson and

6    Ms. Lara, Plaintiff reported what Ms. Anderson and Ms. Lara told her about Ms. Kasaine's

7    alleged statement to her supervisor, Deanna Santana.  (McGee Decl., Ex. C, Santana Dep., vol. I,

8    54:14-55:4, March 18, 2015.)

9           On September 5, 2013, SEIU filed a grievance with the City alleging that the City was not

10   collecting union dues from temporary part-time employees ("TPTs").  (Santana Decl. ¶ 9 and Ex.

11   A.)  The grievance was delivered by email addressed to Plaintiff, Deanna Santana and former

12   Oakland Mayor, Jean Quan, among others.  (Santana Decl. ¶ 10 and Ex. A.)  The SEIU grievance

13   did not specifically reference Ms. Kasaine, the August 6, 2013 meeting, or the statement Ms.

14   Kasaine allegedly made at the August 6, 2013 meeting about not collecting dues from part-time

15   employees.  (Santana Decl., Ex. A.)

16          On September 5, 2013 and September 8, 2013, Plaintiff informed Ms. Kasaine by email

17   that she was subject to a grievance investigation because of the statement she made about not

18   collecting union dues from part-time employees. (Compl. ¶¶ 27-28.)  Sometime thereafter,

19   Plaintiff was informed by former SEIU president, Dwight McElroy, that Ms. Kasaine contacted

20   him to request that the union drop the grievance and promised that if he did she would make sure

21   the union received all the money it was owed.  (McGee Decl., Ex. A, Preston Dep., vol. I, 101:10-

22   14, 102:2-7, 146:1-10, March 17, 2015.)

23          On September 29, 2013, Plaintiff informed Ms. Santana by email that Ms. Kasaine was

24   interfering with the grievance investigation against her by contacting the SEIU president and

25   making promises in an attempt to get him to drop the grievance.  (Compl. ¶ 37.)

26          On October 1, 2013, Plaintiff attended a closed-session meeting of the Oakland City

27   Council. (McGee Decl., Ex. B, Preston Dep., vol. II, 208:24-209:20, April 29, 2015.)  At this

28

1   meeting, City Council was reviewing a proposal submitted by SEIU.  *Id.*  At the bottom of the

2   proposal, there was some language about not withdrawing the grievance concerning the City's

3   failure to collect union dues from part-time employees and Councilmember Desley Brooks asked

4   what that language meant.  *Id.*  In response to Councilmember Brooks' question, Plaintiff

5   explained that the union had filed a grievance alleging that the City had not been collecting dues

6   from part-time employees for years.  *Id.*

7                                    **III. LEGAL ARGUMENT**

8   A.      **Plaintiff's First Amendment Retaliation Claim Fails as a Matter of Law because
            Plaintiff was not Acting or Speaking as a Private Citizen when she Engaged in any of
9           the Conduct Described in her Verified Complaint.**

10          In evaluating a First Amendment retaliation claim, Ninth Circuit case law instructs that

11  courts must consider five factors: (1) whether the plaintiff spoke on a matter of public concern;

12  (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's

13  protected speech was a substantial or motivating factor in the adverse employment action; (4)

14  whether the state had an adequate justification for treating the employee differently from other

15  members of the general public; and (5) whether the state would have taken the adverse

16  employment action even absent the protected speech.  *Dahlia v. Rodriquez*, 735 F.3d 1060, 1067

17  (9th Cir. 2013).  All five factors are critical to the success of a First Amendment retaliation claim;

18  failure to meet any one of them is fatal to plaintiff's case.  *Id.* at 1067 n.4.  With regard to the

19  second factor, "plaintiff bears the burden of showing the speech was spoken in the capacity of a

20  private citizen and not a public employee."  *Eng v. Cooley*, 552 F.3d 1062, 1071 (9th Cir. 2009).

21          A public employee's speech is not protected by the First Amendment when it is made

22  pursuant to the employee's official duties.  *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006); *Hagen*

23  *v. City of Eugene*, 736 F.3d 1251 (9th Cir. 2013).  Speech does not necessarily lose its First

24  Amendment protection because it is expressed at the office or concerns the subject matter of the

25  plaintiff's employment.  *Garcetti*, 547 U.S. at 420-21 (stating fact that plaintiff expressed his

26  views inside his office and that plaintiff's speech concerned the subject matter of his employment

27  was not dispositive).  However, speech that "owes its existence to an employee's professional

28

9

responsibilities" is not protected by the First Amendment. *Hupert v. City of Pittsburg*, 574 F.3d 696, 704 (9th Cir. 2009) (*quoting Garcetti*, 547 U.S. at 421), *overruled on other grounds by Dahlia*, 735 F.3d at 1071.

In a hierarchical employment setting, "whether or not the employee confined his communications to his chain of command is a relevant . . . factor in determining whether he spoke pursuant to his official duties." *Dahlia*, 735 F.3d at 1074. Generally, "when a public employee raises complaints or concerns up the chain of command at his workplace about his job duties, that speech is undertaken in the course of performing his job". *Id.* "[T]he subject matter of the communication is also of course highly relevant to the ultimate determination whether the speech is protected by the First Amendment." *Id.* at 1074-75. Preparation of a routine report, pursuant to normal departmental procedure, typically will be considered within an employee's job duties, while disclosing broad concerns about corruption or systemic abuse may fall outside of the speakers professional duties. *Id.* at 1075. Speech in direct contravention of a supervisor's orders also may be indicative of private citizen speech under certain circumstances. *Id.*

As set forth below, Plaintiff here cannot show that any of her speech at issue in this case was spoken in the capacity of a private citizen.

## 1. The Rainbow Teen Center report.

Plaintiff contends that her refusal to sign an agenda report containing language about Councilmember Desley Brooks violating Charter section 218 is protected First Amendment speech. Put in context, however, it clearly is not protected speech.

One of Plaintiff's duties as Employee Relations Director was drafting and revising agenda reports. (McGee Decl., Ex. B, Preston Dep., vol. II, 191:12-193:24, April 29, 2015.) Consistent with this duty, Plaintiff and her colleague, Fred Blackwell, were tasked with overseeing the issuance of an agenda report concerning various issues involving the East Oakland Rainbow Teen Center ("RTC"). (McGee Decl., Ex. A, Preston Dep., vol. I, 53:9-12, March 17, 2015.) Reports of this nature are reviewed and edited by several people including but not limited to the City Administrator, the City Attorney and other relevant management staff. (McGee Decl., Ex. A,

1    Preston Dep., vol. I, 71:20-72:5, March 17, 2015.)

2           The process of drafting the subject RTC agenda report took a "very long time" and the

3    report went through "many, many" drafts.  (McGee Decl., Ex. B, Preston Dep., vol. II, 177:1-4.)

4    At some point during the drafting of this RTC report, Oakland City Attorney, Barbara Parker,

5    edited the report to include language stating that "we would recommend [referring City

6    Councilmember Desley Brooks] to the Oakland DA for violating Charter section 218".  (McGee

7    Decl., Ex. B, Preston Dep., vol. II, 177:4-10, April 29, 2014.)  It was upon seeing this edit by Ms.

8    Parker that Plaintiff informed her supervisor, Deanna Santana, that she would not sign a report

9    containing such language.  (McGee Decl., Ex. B, Preston Dep., vol. II, 177:4-13, April 29, 2015.)

10          Notably, Ms. Santana also was uncomfortable including any such language in the agenda

11   report for reasons independent of any concerns expressed by Plaintiff. (McGee Decl., Ex. D,

12   Santana Dep., vol. II, 133:1-16, 134:3-11, April 29, 2015.)  Accordingly, the final draft of the

13   RTC report did not contain any language about Councilmember Brooks violating Charter section

14   218 or being referred to the Oakland DA for any such violation.  (McGee Decl., Ex. A, Preston

15   Dep., vol. I, 74:2-8, 74:18-75:2, March 17, 2015; McGee Decl., Ex. B, Preston Dep., vol. II,

16   178:16-23, April 29, 2015.)

17          Plaintiff only communicated her refusal to sign a report containing the suggested Charter

18   violation language to her immediate supervisor, Deanna Santana, and the subject matter of her

19   communication was clearly related to one of her duties as Employee Relations Director, namely,

20   routine preparation of an agenda report.  Moreover, Plaintiff was not speaking in contravention of

21   an order by Ms. Santana nor was she raising concerns of corruption or systemic abuse when she

22   objected to signing a report containing the Charter violation language.  Plaintiff simply disagreed

23   with one of many edits to the RTC report and, in her role as one of the drafters of the report,

24   expressed her disagreement.

25          Finally, Plaintiff's characterization of this incident in her verified complaint as a request

26   by Ms. Santana to "falsify" a report is disingenuous at best and a complete fabrication at worst.

27   Plaintiff's sworn deposition testimony establishes that it was City Attorney Barbara Parker who

28

DEFENDANTS' NOTICE OF MOTION AND MOTION                                    C14-02022 NC
FOR SUMMARY JUDGMENT

1   edited the report to include the Charter violation language.  (McGee Decl., Ex. B, Preston Dep.,

2   vol. II, 177:1-4, April 29, 2015.)  Therefore, the Charter violation language cannot be attributed to

3   Ms. Santana in any way.  Furthermore, Plaintiff admits that she is not an attorney and does not

4   know if Councilmember Brooks violated Charter section 218.  (McGee Decl., Ex. A, Preston

5   Dep., vol. I, 152:14-20, March 17, 2015.)  Thus, Plaintiff has no basis for even suggesting, let

6   alone stating under the penalty of perjury, that she was asked to "falsify" a report by including the

7   Charter violation language.

8          In light of the above, it is indisputable that Plaintiff was not speaking as a private citizen

9   when she objected to signing a report containing the Charter violation language and, as such, her

10  speech in this regard is not protected by the First Amendment.

11          **2.   The allegedly contradictory statement at the open session city council meeting.**

12          Plaintiff's allegedly contradictory statement at the March 6, 2012 city council meeting

13  also does not constitute speech as a private citizen.  As Employee Relations Director, Plaintiff

14  was responsible for supervising and managing the employee relations unit.  (McGee Decl., Ex. A,

15  Preston Dep., vol. I, 80:6-80:9, March 17, 2015.)  The employee relations unit is responsible for

16  collective bargaining, meet-and-confers, investigations and disciplinary actions.  (McGee Decl.,

17  Ex. B, Preston Dep., vol. II, 185:15-185:18, April 29, 2015.)

18          Consistent with her duties as Employee Relations Director, Plaintiff was appointed by

19  Deanna Santana to try to "clean up" a variety of issues around the Rainbow Teen Center

20  ("RTC").  (McGee Decl., Ex. A, Preston Dep., vol. I, 53:9-12, March 17, 2015.)  One of these

21  issues related to staffing of the Rainbow Teen Center.  (McGee Decl., Ex. A, Preston Dep., vol. I,

22  56:12-57:17, March 17, 2015.)   The topic of discussion at the March 6, 2012 city council

23  meeting that gave rise to Plaintiff's allegedly contradictory statement was directly related to these

24  staffing issues.  (McGee Decl., Ex. A, Preston Dep., vol. I, 118:2-9, March 17, 2015.)

25          Ms. Santana and Councilmember Brooks disagreed about whether Councilmember

26  Brooks had been provided certain information about staffing assignments.  (McGee Decl., Ex. A,

27  Preston Dep., vol. I, 118:2-9, March 17, 2015.)  Plaintiff was called to the "mic" by Ms. Santana

28

DEFENDANTS' NOTICE OF MOTION AND MOTION                                         C14-02022 NC
FOR SUMMARY JUDGMENT

to confirm that Councilmember Brooks had in fact been provided the information.  (McGee Decl., Ex. A, Preston Dep., vol. I, 118:14-20, March 17, 2015.) Plaintiff states that she did go to the "mic" but she denied instead of confirmed that Councilmember Brooks had been provided the information.  (McGee Decl., Ex. A, Preston Dep., vol. I, 118:23-119:2, March 17, 2015.)

Plaintiff's speech in this regard clearly "owes its existence to" Plaintiff's duties related to cleaning up RTC staffing issues.  *See Hupert*, 574 F.3d at 704.  Plaintiff would not have been "called to the mic" nor had any reason to speak on this matter but for her involvement, as Employee Relations Director, in cleaning up the RTC staffing issues.  Moreover, describing Plaintiff's statement at the March 6th city council meeting as a "contradiction" of Ms. Santana's statement does not convert it to protected First Amendment speech because the "controlling factor . . . is that [Plaintiff's] statement was made pursuant to [her] duties as [Employee Relations Director]." *Garcetti*, 547 U.S. at 412.  When asked, Plaintiff reported what she knew, from her work on the RTC issues, about Councilmember Brooks having been provided certain information about RTC staffing assignments.  Contradictory or not, Plaintiff's report was part of her professional responsibilities, not protected private citizen speech.[2]

**3.   The Tentative Agreement between the Oakland Fire Department and Local 55.**

As stated above, Plaintiff, in her role as Employee Relations Director, supervised and managed the employee relations unit.  (McGee Decl., Ex. A, Preston Dep., vol. I, 80:6-80:9, March 17, 2015.) The employee relations unit was responsible for collective bargaining and meet-and-confer sessions (McGee Decl., Ex. B, Preston Dep., vol. II, 185:15-185:18, April 29, 2015) and negotiating with unions was one of Plaintiff's duties as Employee Relations Director (McGee Decl., Ex. A, Preston Dep., vol. I, 80:11-15, March 17, 2015).   Consequently, in fulfilling her professional responsibilities as Employee Relations Director and supervisor of the employee relations unit, it was Plaintiff's duty to ensure compliance with City policies and procedures relating to bargaining and meet-and-confer sessions.

---

[2]      Ms. Santana does not and has never believed Plaintiff contradicted her at the March 6, 2012 city council meeting. (McGee Decl., Ex. A, Preston Dep., vol. I, 122:11-123:1, Ex. 4, March 17, 2015; McGee Decl., Ex. D, Santana Dep, vol. II, 142:23- 147:21, March 23, 2015.)

DEFENDANTS' NOTICE OF MOTION AND MOTION                                    C14-02022 NC
FOR SUMMARY JUDGMENT

1   The Tentative Agreement between the Oakland Fire Department ("OFD") and the

2   International Association of Firefighters Union, Local 55 ("Local 55") resulted from a meet-and-

3   confer session and proposals made therein that had not been authorized and approved by Oakland

4   City Council. The only way to fix this problem was to get City Council to authorize the Tentative

5   Agreement retroactively in a closed session meeting. (McGee Decl., Ex. A, Preston Dep., vol. I,

6   86:25-87:3; 126:7-9, March 17, 2015.)

7   In Oakland, the City Administrator and the City Attorney are responsible for setting the

8   closed session agenda. (McGee Decl., Ex. A, Preston Dep., vol. I, 126:25-127:3, 127:7-9, March

9   17, 2015). Therefore, Plaintiff's report of the unauthorized Tentative Agreement to Deanna

10  Santana was an indispensable part of her professional duties to make sure the problem with the

11  Tentative Agreement was corrected by getting it on a closed session agenda and presented to

12  Council for approval.

13  Finally, Plaintiff's claim that this was the second time Oakland Fire Chief, Teresa Reed,

14  signed a tentative agreement without City Council authorization does not convert Plaintiff's

15  report about the unauthorized Tentative Agreement into protected First Amendment speech.

16  Plaintiff did not report Fire Chief Reed's acts of entering into a tentative agreement without City

17  Council authorization to anyone outside of her chain of command and a report of two violations

18  by one City official is a far cry from a report of systemic abuse.

19  **4.   The non-collection of union dues and SEIU's subsequent grievance.**

20  Plaintiff's report of Katano Kasaine's alleged statement about not collecting union dues

21  from part-time employees to her supervisor, Deanna Santana, is not protected First Amendment

22  speech because the report was made pursuant to Plaintiff's official duties. The Employee

23  Relations Unit is the only unit authorized to engage in collective bargaining. (McGee Decl., Ex.

24  B, Preston Dep., vol. II, 187:5-6, April 29, 2015.)  Plaintiff's duties as Employee Relations

25  Director included negotiating with labor unions as Chief Negotiator for the City of Oakland.

26  (McGee Decl., Ex. A, Preston Dep., vol. I, 80:11-15, March 17, 2015; McGee Decl., Ex. B,

27  Preston Dep., vol. II, 187:21, April 29, 2015; RJN, Ex. A, Compl. ¶ 21.)  Plaintiff learned of Ms.

28

1   Kasaine's alleged statement about not collecting union dues when the City was in the middle of

2   collective bargaining with SEIU over various issues including dues collection.  (McGee Decl.,

3   Ex. B, Preston Dep., vol. II, 204:16-24, 205:18-20, 205:22-23, April 29, 2015.)  Plaintiff admits

4   that it was her duty, as Chief Negotiator, to bring to Deanna Santana's attention any information

5   she learned about the City failing to collect union dues from part-time employees, and that is

6   exactly what she did.  (McGee Decl., Ex. B, Preston Dep., vol. II, 190:22-191:8, April 29, 2015.)

7   Accordingly, it is indisputable that Plaintiff's report to Ms. Santana about the City's alleged

8   failure to collect union dues was made pursuant to her duties as Employee Relations Director.

9   *See Garcetti*, 547 U.S. at 421 (plaintiff's expressions made pursuant to duties as calendar deputy

10  were not protected under First Amendment).

11       Plaintiff's report about Ms. Kasaine's interference with the investigation of SEIU's

12  grievance over the City's alleged non-collection of dues was also made pursuant to her

13  professional duties as Employee Relations Director.   The Employee Relations Unit was

14  responsible for all grievance investigations.  (McGee Decl., Ex. A, Preston Dep., vol. I, 105:3-4,

15  March 17, 2015.)  Because Ms. Kasaine's alleged interference with the SIEU grievance

16  investigation would have undermined the investigation, Plaintiff's act of reporting Ms. Kasaine's

17  interference with the investigation was part of Plaintiff's official duties related to grievance

18  investigations.

19       Finally, Plaintiff's statement about the SEIU grievance during a closed session meeting of

20  the Oakland City Council cannot possibly be considered private citizen speech.  As Employee

21  Relations Director, Plaintiff regularly participated in closed session meetings involving

22  discussions about labor issues.  (McGee Decl., Ex. A, Preston Dep., vol. I, 91:6-8, March 17,

23  2015.)  Plaintiff's statement about the SEIU grievance was made in response to a question from

24  Councilmember Desley Brooks about an SEIU proposal being considered at the closed session

25  meeting.  (McGee Decl., Ex. B, Preston Dep., vol. II, 208:24-209:20, April 29, 2015.)  By

26  attending the closed session meeting and responding to questions posed by councilmembers at

27  that meeting, Plaintiff was doing exactly what she was paid to do as Employee Relations Director.

28

1   *See Garcetti*, 547 U.S. at 422 ("When [plaintiff] went to work and performed the tasks he was

2   paid to perform, [plaintiff] acted as a government employee.").  Moreover, it is immaterial that

3   Plaintiff's statement about the SEIU grievance was allegedly made in contravention of an order

4   by her supervisor (*see* RJN, Ex. A, Compl. ¶ 40) because it is not the propriety of the statement

5   that matters; it is the capacity in which it is made.  *Id.* at 422-23 ("Employers have heightened

6   interests in controlling speech made by an employee in his or her professional capacity.").

7   **B.      Plaintiff's California Labor Code Claim fails in part because Plaintiff did not
           Disclose or Refuse to Participate in Violations of State or Federal Law.**

8

9          When Plaintiff's employment with the City of Oakland was terminated on October 3,

10  2013, the California Labor Code whistleblower protection statute prohibited retaliation against an

11  employee who disclosed information about, or refused to participate in, violations of state and

12  federal law.  Cal. Lab. Code §§ 1102.5(b), (c) (Effective January 1, 2004 – December 31, 2013),

13  *amended by* Stats. 2013, ch. 781, § 4.1 (October 12, 2013).  Amendments to Labor Code section

14  1102.5 that became effective on January 1, 2014 expanded the protections of section 1102.5 to

15  disclosures of information about, or a refusal to participate in, violations of local laws as well.

16  Cal. Lab. Code §§ 1102.5(b), (c) (2014).  Thus, the first issue that must be decided is whether the

17  current version or the former version of Labor Code section 1102.5 is applicable to Plaintiff's

18  claims in this case.

19         When a statute changes existing law, the statute may be applied retroactively only if it

20  contains express language of retroactivity or if other sources provide a clear and unavoidable

21  implication that the Legislature intended retroactive application. *McClung v. Employment Dev.*

22  *Dep't*, 34 Cal. 4th 467, 471-75 (2004).  It is indisputable that the current version of Labor Code

23  section 1102.5, which imposes liability for conduct not included in the prior version of the statute,

24  constitutes a change in the law.  Accordingly, the current version of Labor Code section 1102.5

25  may not be applied to Plaintiff's claims in this case, which are based entirely on pre-amendment

26  conduct, in the absence of express language of retroactivity or a clear and unavoidable

27  implication that the Legislature intended retroactive application.  *McClung*, 34 Cal. 4th at 475

28  ("[I]t has long been established that a statute that interferes with antecedent rights will not operate

16

1   retroactively unless such retroactivity be the unequivocal and inflexible import of the terms, and

2   the manifest intention of the legislature.")

3      The current version of Labor Code section 1102.5 does not contain any express

4   retroactivity language.  *Compare* CAL. LAB. CODE § 1720.4 (2012) (containing express language

5   of retroactivity) *with* CAL. LAB. CODE § 1102.5 (2014) (containing no such language).

6   Furthermore, nothing in the legislative history of the amendment to Labor Code section 1102.5

7   suggests that the Legislature intended retroactive application.  (RJN, Ex. B, Stats. 2013, ch. 781, §

8   4.1.)  Accordingly, the current version of Labor Code section 1102.5 does not apply retroactively

9   and may not be applied to Plaintiff's claims in this case which are based entirely on pre-

10  amendment conduct.  Applying the former version of Labor Code section 1102.5, it is clear that

11  Plaintiff's Labor Code claim based on: 1) her refusal to sign an agenda report containing language

12  about Councilmember Desley Brooks violating Charter section 218; 2) her alleged contradiction

13  of Deanna Santana at an open-session city council meeting; 3) her report of the unauthorized

14  Tentative Agreement between OFD and Local 55; 4) her complaint about Katano Kasaine's

15  alleged interference with the union grievance investigation; and 5) her statement about the union

16  grievance during a closed-session city council meeting, fails as matter of law.

17     To prevail on a cause of action under section 1102.5, Plaintiff must establish a prima facie

18  case of retaliation.  *Edgerly v. City of Oakland*, 211 Cal. App. 4th 1191, 1199 (2012).  "To

19  establish a prima facie case, Plaintiff must show that she was subjected to adverse employment

20  action after engaging in protected activity and that there was a causal connection between the

21  two.  *Id.*  Prior to the 2013 amendment of section 1102.5, a "protected activity" was the disclosure

22  of or opposition to a "violation of a state or federal statute or a violation or noncompliance with a

23  state or federal rule or regulation"  *Id.*; *see also Mueller v. County of Los Angeles*, 176

24  Cal.App.4th 809, 821–822 (2009) ("Section 1102.5 requires that to come within its provisions,

25  the activity disclosed by an employee must violate a federal or state law, rule, or regulation.").

26  Retaliation for disclosures of or opposition to violations of local law was not actionable under the

27  former version of Labor Code section 1102.5.  *See Edgerly,* 211 Cal.App.4th at, 1201 ("[T]he

28

plain language of section 1102.5 provides that it applies to [violations of state or federal law] . . . the omission of the term 'local laws' is indicative of legislative intent to exclude such laws from the purview of section 1102.5.").

### 1. The Rainbow Teen Center report.

There is no evidence in this case that the edits made to the Rainbow Teen Center report by Oakland City Attorney, Barbara Parker, violated any law, let alone state or federal law. As City Attorney, Ms. Parker was more than qualified to determine whether a violation of Charter Section 218 had occurred and well within her authority to suggest including Charter violation language in the agenda report. More importantly, Plaintiff admits that she is not an attorney and has no idea if Councilmember Brooks violated Charter Section 218. Thus, Plaintiff's objection to signing an agenda report containing the suggested Charter violation language does not constitute protected activity within the meaning of the applicable version of Labor Code section 1102.5.

### 2. Plaintiff's alleged contradiction of Deanna Santana.

Plaintiff's alleged contradiction of Deanna Santana at the March 6, 2012 City Council meeting also does not constitute protected activity within the meaning of the applicable version of Labor Code section 1102.5. Even if you accept Plaintiff's assertion that she publically contradicted Ms. Santana, her contradiction evidences nothing more than the fact that Plaintiff and Ms. Santana recalled past events differently. There is zero evidence in this case that Ms. Santana deliberately called Plaintiff to the mic to lie or misrepresent facts.[3] Indeed, it has been Ms. Santana's position all along that Plaintiff did not contradict her and any belief to the contrary is nothing more than a misunderstanding over what Plaintiff was being asked to confirm. (McGee Decl., Ex. A, Preston Dep., vol. I, 122:11-123:1, Ex. 4, March 17, 2015; McGee Decl., Ex. D, Santana Dep., vol. II, 142:23- 147:21, March 23, 2015.)

///

///

---

[3]     Although it clearly would have been unethical and immoral to ask Plaintiff to lie or misrepresent facts at the council meeting, it is not at all clear that doing so would have violated state or federal law.

**3.     The Tentative Agreement between the Oakland Fire Department and Local 55.**

Plaintiff does not allege, and there is no evidence in this case that, it was a violation of state or federal law for OFD and Local 55 to enter into a tentative agreement without first obtaining City Council approval.  To the contrary, Plaintiff states that it was City of Oakland procedures that required prior approval from City Council (McGee Decl., Ex. A, Preston Dep., vol. I, 83:15-18; 84:21-85:4, March 17, 2015) not state or federal law.  Therefore, Plaintiff's report that Oakland Fire Chief, Teresa Reed, signed a tentative agreement without first obtaining Council approval was only a disclosure of a violation of local law and does not constitute protected activity within the meaning of the applicable version of Labor Code section 1102.5.  *See Edgerly v. City of Oakland*, 211 Cal. App. 4th at 1205 (". . . Edgerly's perceived violations of the City's charter and local rules and ordinances are not within the purview of section 1102.5, and her whistleblower claim fails as a matter of law.").

**4.     Katano Kasaine's alleged interference with the investigation of SEIU's grievance.**

Plaintiff contends that Katano Kasaine's alleged interference with the investigation of SEIU's grievance was a violation of California Government Code section 3506.  (RJN, Ex. A, Compl. ¶ 37.)  However, Government Code section 3506 does not prohibit interference with union grievance investigations.  It prohibits public agencies and employee organizations from interfering with, intimidating, restraining, coercing or discriminating against public employees for exercising their right to form, join, and participate in the activities of employee organizations or to refuse to join or participate in the activities of employee organizations.  *See* Cal. Gov't Code § 3506.  Accordingly, Plaintiff's complaint about Ms. Kasaine's alleged interference with the grievance investigation does not constitute protected activity within the meaning of the applicable version of Labor Code section 1102.5.

**5.     Plaintiff's statement about the SEIU grievance at closed session.**

Plaintiff's contention that her statement about the SEIU grievance at closed session constitutes protected activity within the meaning of Labor Code section 1102.5 is meritless.  Plaintiff emphatically states that she "did not report" that the SEIU had filed a grievance at closed

19

session (McGee Decl., Ex. B, Preston Dep., vol. II, 206:16-19, April 29, 2015); she merely responded to a question from Councilmember Desley Brooks which required her to explain that SEIU had filed a grievance alleging that the City had not been collecting union dues from part-time employees for years (McGee Decl., Ex. B, Preston Dep., vol. II, 209:1-20, April 29, 2015). In no way did Plaintiff's response to Councilmember Brook's question constitute a disclosure of or opposition to a violation of federal or state law, even if responding to the question required Plaintiff to disobey a direct order from her supervisor not to raise the topic of the SEIU grievance (*see* RJN, Ex. A, Compl. ¶ 40).

It was not a violation of law for SEIU to file a grievance, so disclosing that the grievance had been filed clearly is not a disclosure of a violation of law.  Additionally, it would not have been unlawful for Ms. Santana to direct Plaintiff not to raise the topic of the SEIU grievance at closed session.  *See Garcetti*, 547 U.S. at 422-23 ("Employers have heightened interests in controlling speech made by an employee in his or her professional capacity. Official communications have official consequences, creating a need for substantive consistency and clarity. Supervisors must ensure that their employees' official communications are accurate, demonstrate sound judgment, and promote the employer's mission.")  Thus, Plaintiff's alleged disobedience of Ms. Santana's order not to raise the topic of the SEIU grievance at closed session does not constitute opposition to a violation of law.

**C.     Plaintiff has not and cannot State a Retaliation Claim under the First Amendment or California Labor Code section 1102.5 based on her alleged Contradiction of Deanna Santana at the March 6, 2012 City Council Meeting because there is no Evidence that Ms. Santana had Knowledge of any Contradiction.**

Under both the First Amendment and California Labor Code section 1102.5, Plaintiff has the burden of establishing a causal link between her alleged protected activity and Defendants' alleged adverse employment action.  *See Eng v. Cooley*, 552 F.3d 1062, 1071 (9th Cir. 2009) (plaintiff bears the burden of showing the state took adverse employment action and that the speech was a substantial or motivating factor in the adverse action); *Morgan v. Regents of Univ. of Cal.*, 88 Cal. App. 4th 52, 69 (2000) (plaintiff must show that she engaged in protected activity, that she was subjected to adverse employment action, and that there was a causal link between the

20

two).  Essential to establishing the causal link is evidence that the employer was aware that plaintiff engaged in the protected activity.   *See Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982); *Morgan v. Regents of Univ. of Cal.*, 88 Cal. App. 4th at 70; *see also Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995) (concluding district court erred by finding causal link between adverse action and protected activity where there was no evidence of defendants' knowledge of plaintiff's First Amendment actions).

Even assuming Plaintiff's alleged contradiction of Ms. Santana at the open session city council meeting constituted protected activity under the First Amendment and Labor Code section 1102.5, there is no evidence in this case that Ms. Santana has ever been aware that Plaintiff contradicted her.  The email exchange between Plaintiff and Ms. Santana the same night of the open session meeting not only shows that Ms. Santana was not aware of any contradictory statement by Plaintiff; it shows that Ms. Santana did not believe Plaintiff contradicted her at all. (McGee Decl., Ex. A, Preston Dep., vol. I, 119:7-12; 122:2-123:1, 124:19-22, Ex. 4, March 17, 2015.)   Accordingly, Plaintiff's First Amendment and Labor Code claim based on her alleged contradiction of Ms. Santana at the open session city council meeting must fail.

**D.**     **Plaintiff has not and cannot State a Retaliation Claim under the First Amendment or California Labor Code section 1102.5 based on her Report of Katano Kasaine's alleged Statement about not Collecting Union Dues or Ms. Kasaine's alleged Interference with the Investigation of the Union's Subsequent Grievance because Indisputable Evidence shows that Ms. Santana's Decision to Terminate Plaintiff's Employment with the City was made before the Union Dues Issue Arose.**

As stated above, a plaintiff has the burden of establishing that her protected activity was a motivating factor for defendant's alleged adverse employment action. *See Eng*, 552 F.3d at 1071; *Morgan*, 88 Cal. App. 4th at 69.  Plaintiff here cannot establish that she was terminated as a result of her report of Katano Kasaine's alleged statement about not collecting union dues or Ms. Kasaine's alleged interference with the investigation of the union grievance.

Deanna Santana first contemplated terminating Plaintiff in February or March of 2013 after it was brought to her attention that Plaintiff destroyed a written statement prepared by a City employee for an investigation being initiated by the Human Resources department.  (McGee

Decl., Ex. C, Santana Dep., vol. I, 17:2-18:4, March 18, 2015.)  Consequently, Ms. Santana spoke

to former City of Oakland mayor, Jean Quan, about hiring a new Employee Relations Director.

(Declaration of Jean Quan in support of Motion for Summary Judgment ("Quan Decl."), ¶ 2.)

Ms. Santana made the decision to terminate Plaintiff in June of 2013 and informed Mayor Quan

of this decision.  (McGee Decl., Ex. C, Santana Dep., vol. I, 27:12-20, March 18, 2015; Quan

Decl. ¶ 4.)  Plaintiff's reports of Ms. Kasaine's alleged statement about not collecting union dues

and Ms. Kasaine's alleged interference with the investigation of the union's subsequent grievance

occurred sometime in August or September 2013, after Ms. Santana had already decided to

terminate Plaintiff.  (McGee Decl., Ex. C, Santana Dep., vol. I, 54:14 - 23, March 18, 2015; RJN,

Ex. A, Compl. ¶¶ 26, 37.)  Accordingly, Plaintiff's reports in this regard were not a motivating

factor for the decision to terminate Plaintiff.

**E.      Plaintiff would have been Terminated even in the Absence of her Alleged Protected
         Conduct.**

A defendant may avoid liability for retaliation under the First Amendment and California

Labor Code section 1102.5 by showing that it would have reached the same adverse employment

decision even in the absence of the employee's protected conduct.  *Eng v. Cooley*, 552 F.3d 1062,

1072 (9th Cir. 2009); *Mokler v. Cnty. of Orange*, 157 Cal. App. 4th 121, 138 (2007).  In this case,

the decision to terminate Plaintiff was based on several incidents unrelated to any of Plaintiff's

alleged protected conduct.

Plaintiff regularly failed to properly execute the duties and responsibilities of her position.

(McGee Decl., Ex. E, City of Oakland's Supplemental Resp. to Plaintiff's Special Interrog., Set

One, Supplemental Resp. to Special Interrog. No. 2.)  Plaintiff sent actionable labor related

reports to Oakland City Council in closed session that had not been approved or review by the

City Administrator in violation of City closed session report protocol.  *Id.*  In addition, Plaintiff

sent City bargaining positions to different bargaining units without clearing those positions with

the appropriate supervising unit.  *Id.*  Those failures created later conflicts, potential legal issues

and unnecessary tension during the bargaining process.  *Id.*

These issues were brought to Plaintiff's attention numerous times, and various corrective

actions were suggested, such as deferring items on the Council Agenda and assessing workload more effectively.  *Id.*  However, Plaintiff appeared to make no effort to improve.  *Id.*  Plaintiff even went so far as to offer to disclose to City Council that neither the City Administrator nor the City Attorney had reviewed or approved the documents she prepared.  *Id.*  However, this offer was clearly unacceptable as it only served to exacerbate the problem.

Plaintiff acted improperly and abused her authority as Employee Relations Director.  In 2013, Ms. Santana assigned a personnel investigation to the Oakland Police Department after several allegations of misuse of resources were made against a City employee.  *Id.*  Plaintiff interfered with the investigation by questioning a witness who had been interviewed in relation to the investigation, tearing up a written statement prepared by the witness for the investigation, and instructing the witness not to provide the statement.  *Id.*

Plaintiff demonstrated a lack of understanding of proper City procedures related to terminating an employee and an inability to carry out her duties related to employee terminations.  *Id.*  Plaintiff made the decision to terminate a City employee named JoAnne Summerville who had been on extended medical leave.  *Id.*  When Plaintiff attempted to carry out the termination, Plaintiff failed to comply with City processes and deadlines.  *Id.*  As a result, the City rescinded the termination notice and reinstated Ms. Summerville.  *Id.*  Plaintiff rejected all counseling on her errors and only defended her actions in terminating Ms. Summerville.  *Id.*

Plaintiff's inappropriate behavior and abuse of her position became abundantly clear when Deanna Santana was advised by former Chief of Police, Howard Jordan, that he had received reports from OPOA and IAFF that Plaintiff was sabotaging the City efforts to work with them on a bargaining issue related to the return of the value of one furlough day.  *Id.*   It was reported that Plaintiff was disseminating inaccurate information about the City entering into a more favorable agreement with the IAFF.  *Id.*  It was further reported that Plaintiff was encouraging the OPOA to file a grievance over the City's alleged unfair bargaining effort.  *Id.*

At Chief Jordan's suggestion, Deanna Santana arranged to have Plaintiff's emails monitored and it was discovered that Plaintiff was sending dozens of confidential documents to

DEFENDANTS' NOTICE OF MOTION AND MOTION
FOR SUMMARY JUDGMENT

1    herself and to third parties who had no authorization or need to receive these documents.  *Id.*

2         In mid to late July 2013, simultaneously with the above events, Plaintiff conveyed

3    inaccurate instructions to the Payroll Department that the City would not be making bargained for

4    pay increases retroactive to July 1st.  *Id.*  This instruction was made without any authority, was

5    contrary to the agreement reached with the bargaining units and was contrary to City Council

6    instructions on the issue.  *Id.*

7         In light of the above, it is clear the Defendants had several legitimate, independent reasons

8    to terminate Plaintiff's employment with the City.  Therefore, Plaintiff's retaliation claims under

9    the First Amendment and California Labor Code section 1102.5 should fail.

10                                  **IV. CONCLUSION**

11        For all the foregoing reasons, Defendants' respectfully request that the Court grant their

12   motion for summary judgment or alternative request for partial summary judgment.

13

14   Dated:   May 27, 2015                    BARBARA J. PARKER, City Attorney

15                                            OTIS McGEE, JR., Chief Assistant City Attorney
                                              MARIA BEE, Supervising Trial Attorney
16                                            JENNIFER N. LOGUE, Deputy City Attorney

17
                                              By: /s/Jennifer N. Logue_____
18                                                Attorneys for Defendants CITY OF OAKLAND and
                                                  DEANNA SANTANA
19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION                      C14-02022 NC
FOR SUMMARY JUDGMENT