1

2

3

4

5

6

7        UNITED STATES DISTRICT COURT

8      NORTHERN DISTRICT OF CALIFORNIA

9

10   DARYELLE LAWANNA PRESTON,                    Case No. 14-cv-02022 NC

11          Plaintiff,
                                                 **ORDER DENYING IN PART AND**
12      v.                                       **GRANTING IN PART**
                                                 **DEFENDANTS' MOTION FOR**
13   CITY OF OAKLAND, et al.,                    **SUMMARY JUDGMENT**

14          Defendants.                          Re: Dkt. No. 74

15

16        This case is about the October 2013 termination of Daryelle Lawanna Preston from

17   her position as Oakland City Employee Relations Director.  Preston alleges that her

18   termination was unlawful because it violated the First Amendment's protection of private

19   speech and the California protection for whistleblowers.  Preston believes she was fired

20   because she spoke out publicly against her supervisor, City Administrator Deanna Santana,

21   about issues of systemic abuse.  Specifically, Preston points to four incidents which gave

22   rise to speech that she alleges are protected by the Constitution and state law.  Defendants

23   City of Oakland and Santana move for summary judgment on all issues presented in the

24   complaint, arguing that all of the speech was made pursuant to Preston's job duties, so it is

25   not protected.  In addition, defendants argue that Preston cannot prove that she was fired

26   because of the speech, claiming instead that she was fired for poor job performance.

27   //

28

Case No. 14-cv-02022 NC

1   The Court has considered the evidence presented and concludes that there are

2   genuine disputes of material facts as to nearly all instances of alleged protected speech.

3   However, the Court finds that Preston's speech in the March 6, 2012, City Council

4   meeting owed its existence to her role as Employee Relations Director.  Because she was

5   speaking in an official capacity about events that occurred in the course of her job, the

6   Court finds that this speech cannot be considered private speech, and thus is not protected

7   by the First Amendment.  Therefore, the Court GRANTS summary judgment on the First

8   Amendment claim regarding the March 6, 2012, City Council meeting.  The Court

9   DENIES summary judgment as to all other issues.

10  **I.   BACKGROUND**

11     **A.   Facts Presented**

12       In July 2007, Preston was hired by the City of Oakland as a Human Resources

13  Manager.  Preston Dep. 22, 27.[1]  In August 2011, defendant Deanna Santana was hired as

14  the Oakland City Administrator.  Santana Dep. 4-5.[2]  In January 2012, Santana promoted

15  Preston to Employee Relations Director.  Preston Dep. 39.  Preston served as Employee

16  Relations Director until her employment was terminated by Santana on October 3, 2013.

17  Santana Dep. 40.

18       **1.  East Oakland Rainbow Teen Center Report**

19       The Rainbow Teen Center Digital Arts & Culinary Academy (RTC) is a youth

20  center in East Oakland.  Blackwell Dep. 19.  Fred Blackwell was an Assistant City

21  Administrator under Santana.  Santana Dep. 102.  Santana assigned Preston and Blackwell

22  to write a report concerning various issues regarding the RTC.  Blackwell Dep. 24[3];

23  Preston Dep. 53.  The report was "focused on management review," and Preston

24  _____

25  [1] Excerpts from Preston's deposition have been submitted to the Court as part of
   defendants' motion, Dkt. No. 80, Declaration of Otis McGee, Jr., Exhibits A and B.

26  Additionally, plaintiff separately submitted an expanded excerpt as part of plaintiff's
   opposition, Dkt. No. 86, Declaration of Sonya Mehta, Exhibits A.  The Court refers to

27  these documents together as "Preston Dep."
   [2] Dkt. No. 80, Declaration of Otis McGee, Jr, Exhibit C; Dkt. No. 86, Declaration of Sonya

28  Mehta, Exhibit D ("Santana Dep.").
   [3] Dkt. No. 86, Declaration of Sonya Mehta, Exhibit B ("Blackwell Dep.").

United States District Court
Northern District of California

1    responsible for investigating the RTC's staff hiring issues.  Santana Dep. 131; Preston

2    Dep. 53-54.

3         The report went through many drafts, and Preston attended meetings on the report

4    with Santana and Oakland City Attorney Barbara Parker.  Preston Dep. 151-52, 177.

5    Preston testified that during these meetings, Santana and Parker discussed including

6    language in the report that Councilmember Brooks violated City Charter § 218.  Preston

7    Dep. 151-52.  Preston testified that Santana and Parker disliked Brooks and wanted to

8    include the language in the report "because they believed this was their opportunity to get

9    rid of Desley Brooks."  Preston Dep. 152.

10        At some point, Parker included language in the report stating, "we would

11   recommend [referring Brooks] to the Oakland DA for violating Charter section 218."

12   Santana Dep. 137-138; Preston Dep. 177.  Preston testified that Santana ordered her to

13   include this language in the public RTC report.  Preston Dep. 52, 70, 74.  In February

14   2012, Preston refused to sign the report and informed Santana that she would not sign a

15   report that included any language about Brooks violating Charter § 218 or being referred to

16   the Oakland District Attorney.  Preston Dep. 177.  Preston told Santana that she thought

17   Santana was treating Brooks differently because Brooks is African American.  Preston

18   Dep. 50-52.  Santana testified that she also had concerns about including the language.

19   Santana Dep. 133-134.  Santana decided that it was not her job nor did she have the

20   authority to declare whether a violation of the City Charter occurred, and the final report

21   did not include such language.  Santana Dep. 133-134; Preston Dep. 74.

22              **2.  March 6, 2012, City Council Meeting**

23        Preston and Santana attended a March 6, 2012, Oakland City Council meeting.

24   About four hours into the meeting, Councilmember Brooks disagreed with Santana

25   whether Brooks had been present at a meeting to discuss assigning the Rainbow

26   Community Center Director to oversee both the Rainbow Community Center and the RTC.

27   Preston Dep. 118.  Santana asked Blackwell and Preston to come to the microphone to

28   "confirm" that Councilmember Brooks had been provided the information.  Preston Dep.

United States District Court
Northern District of California

1    118; Dkt. No. 87 (video recording of Council meeting).   Preston testified that she stated at

2    the City Council meeting that Brooks had not been informed.  Preston Dep. 118-19.  That

3    night, Preston emailed Santana apologizing for contradicting Santana at the meeting.

4    Preston Dep. 119, 122, 124.  Santana replied that they had in fact agreed.  Preston Dep.

5    124.  After Preston clarified her initial email, Santana replied that she had agreed all along.

6    Preston Dep. 123-24.  Santana testified that she still does not believe that Preston

7    contradicted her.  Santana Dep. 142.

8         Preston testified that after the March 6, 2012, meeting, Santana became hostile and

9    confrontational with her.  Preston Dep. 115.  According to Preston, Santana seemed angry

10   and short with Preston, and there was a chill to their relationship.  Preston Dep. 115;

11   Preston Decl. ¶ 6.  Preston testified that Santana disinvited Preston to core team meetings

12   and canceled one-on-one meetings.  Preston Dep. 214.

### 3.  Tentative Agreement with International Association of Firefighters Union, Local 55

13

14        A "meet-and-confer" is a process an employer engages in with organized labor

15   over a mandatory subject of bargaining in order to reach an agreement on terms and

16   conditions.  Preston Dep. 80-81.  Preston testified that City of Oakland policy and

17   procedure requires any city representative who intends to engage in a meet-and-confer

18   with organized labor to obtain City Council authorization.  Preston Dep. 83-85.

19        In February 2012, Preston sent out a memo noting that department managers had

20   been negotiating a number of side letters with organized labor without authority, and

21   reminded managers not to mislead labor groups on their authority to negotiate contracts.

22   Preston Decl. ¶ 7.  In March 2012, Oakland Fire Chief Teresa Reed emailed Preston

23   stating she needed to reopen and renegotiate a contract because she had bargained without

24   Council authority.  Reed Dep. 12-14.[4]

25        In June 2013, the Oakland Fire Department engaged in a meet-and-confer with the

26   International Association of Firefighters Union, Local 55 ("Local 55") about extending a

27

---

28   [4] Dkt. No. 86, Declaration of Sonya Mehta, Exhibit I ("Reed Dep.").

1   Paramedic Support Program. Reed Dep. 18-20.  As a result, the Fire Department and Local

2   55 agreed to extend the Paramedic Support Program for an additional 30 days.  Reed Dep.

3   18-19.  Council authorization and approval had not been obtained before the tentative

4   agreement was negotiated and signed.  Reed Dep. 22-25.

5        Reed testified that she thought Santana had given her approval to negotiate and sign

6   the agreement.  Reed Dep. 26.  Santana states that she did not give Reed permission to

7   negotiate the agreement without Council approval.  Santana Dep. 85.  Preston learned of

8   the agreement and directed an employee relations staff to tell Reed not to negotiate the

9   agreement without authorization.  Preston Dep. 86, 88.  Preston reported Reed's acts to

10  Santana.  Preston Dep. 88.  Preston testified that Santana told her that City Council

11  approval was a "waste of time."  Preston Dep. 126.  Preston believes that Reed and

12  Santana had prior discussions to enter into the agreement without City Council approval.

13  Preston Dep. 78-79.  Preston declares that she reported the unlawful agreement to Santana,

14  Parker, and Councilmember Brooks.  Preston Decl. ¶¶ 9, 10.

15       Preston states that after many "unpleasant conversations" with Santana on the

16  matter, the Tentative Agreement was presented to City Council in a special closed session

17  meeting on July 10, 2013.  Preston Dep. 126; Santana Decl. ¶ 7.  Preston testified that

18  Santana disinvited her from the closed City Council session where the agreement was

19  ratified.  Preston Dep. 127.

20              **4.  The Non-Collection of Union Dues**

21       On August 6, 2013, Oakland Treasurer Katano Kasaine, Employee Relations staff

22  Sonia Lara and Anderson, and members of the SEIU Local 1021 bargaining team had a

23  meeting.  Preston Dep. 93; Kasaine Dep. 10, 18, 22.[5]  Kasaine was responsible for

24  collecting union dues from SEIU City employees.  Kasaine Dep. 17.  According to Lara

25  and Anderson, Kasaine stated at the meeting that she had not been deducting union dues

26  from part-time employees for years.  Preston Dep. 94; Keffer Dep. 27-28; Lara Dep. 51-

27

28  _____

[5] Dkt. No. 86, Declaration of Sonya Mehta, Exhibit K ("Kasaine Dep.").

United States District Court
Northern District of California

52.[6]  Kasaine denied ever making this statement.  Kasaine Dep. 21, 24, 30.  Preston did not attend the meeting, but learned about the statements from Lara and Anderson.  Preston Dep. 93.

On September 5, 2013, SEIU filed a grievance about the City's failure to collect union dues.  Santana Decl. ¶ 9; Preston Dep. 99-100.  Preston reported the grievance to Santana and Kasaine and started an investigation of the grievance.  Preston Decl. ¶ 11.  Kasaine responded that she did not need to be interviewed regarding the grievance.  Kasaine Dep. 33-34.  Preston made efforts to contact Kasaine, but never interviewed her.  Kasaine Dep. 37.

Sometime later, Dwight McElroy, former SEIU president, informed Preston that Kasaine contacted him to request that the union drop the grievance and promised that if he did, she would make sure the union received all the money it was owed.  Preston Dep. 101, 102, 146; McElroy Dep. 87-88.[7]  On September 12, 2013, Santana called Preston and removed her from the investigation.  Preston Decl. ¶ 13.  The Chief Assistant City Attorney denied that it was Preston's job duty to investigate.  McGee Dep. 4, 25.  Preston disclosed Santana's removal of her from the investigation, and the grievance itself, to Deputy Mayor Sandre Swanson.  Preston Decl. ¶ 13.

On September 29, 2013, Preston reported Kasaine's interference with the investigation to Santana and Parker.  Preston Decl. ¶ 17.  Preston raised concerns that Kasaine was conducting analysis of the data regarding the grievance against her.  Preston Decl. ¶ 17.

On October 1, 2013, Preston attended a closed-session meeting of the Oakland City Council.  Preston Dep. 208-09.  Preston testified that Santana ordered her not to disclose the SEIU grievance at the closed session.  Preston Dep. 207-08.  At the meeting, the City Council was reviewing a proposal submitted by SEIU.  Preston Dep. 207-08.  At the bottom of the proposal, there was some language about not withdrawing the grievance

---

[6] Dkt. No. 86, Declaration of Sonya Mehta, Exhibits L, M.
[7] Dkt. No. 86, Declaration of Sonya Mehta, Exhibit N.

1  concerning the City's failure to collect union dues.  Preston Dep. 207-08.  Councilmember

2  Brooks asked Preston what the Union meant that it would not withdraw the grievance.

3  Preston Dep. 208-09.  Preston replied truthfully that SEIU had a grievance alleging the

4  City had not been collecting dues from part-time employees for years.  Preston Dep. 209.

5         Santana terminated Preston on October 3, 2013 at 8:45 a.m.  Preston was denied the

6  post-termination practice of "checking out" that all departing employees go through.

7  Santana Dep. 165-167.

8       **B.**     **Procedural History**

9         Preston filed this lawsuit on March 17, 2014, in Alameda County Superior Court.

10  Dkt. No. 2-1.  After removing the action to federal court, the City of Oakland and Santana

11  filed a motion to dismiss on May 9, 2014, which the Court denied.  Dkt. Nos. 6, 16.  On

12  May 27, 2015, defendants moved for summary judgment on all claims.  Dkt. No. 74.  After

13  plaintiff filed an opposition, defendants made twelve evidentiary objections in their reply.

14  Dkt. Nos. 89, 90.  The Court permitted plaintiff to file a response to the evidentiary

15  objections after the briefing was complete.  Dkt. Nos. 90, 92.  The Court held a hearing on

16  the motion on July 1, 2015.  Dkt. No. 93.  The Court has jurisdiction over Preston's First

17  Amendment claim under 28 U.S.C. § 1331, and her state law claim under 28 U.S.C. §

18  1367.  All parties have consented to the jurisdiction of a magistrate judge.  Dkt. Nos. 8, 9.

19  **II.**   **LEGAL STANDARD**

20         Summary judgment may be granted only when, drawing all inferences and

21  resolving all doubts in favor of the nonmoving party, there is no genuine dispute as to any

22  material fact.  Fed. R. Civ. P. 56(a); *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014);

23  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material when, under

24  governing substantive law, it could affect the outcome of the case.  *Anderson v. Liberty*

25  *Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine if "the

26  evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

27  Bald assertions that genuine issues of material fact exist are insufficient.  *Galen v. Cnty. of*

28  *L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).

United States District Court
Northern District of California

1    The moving party bears the burden of identifying those portions of the pleadings,

2    discovery, and affidavits that demonstrate the absence of a genuine issue of material fact.

3    *Celotex*, 477 U.S. at 323.  Once the moving party meets its initial burden, the nonmoving

4    party must go beyond the pleadings, and, by its own affidavits or discovery, set forth

5    specific facts showing that a genuine issue of fact exists for trial.  Fed. R. Civ. P. 56(c);

6    *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1004 (9th Cir. 1990) (citing *Steckl v.*

7    *Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983)).  All justifiable inferences, however,

8    must be drawn in the light most favorable to the nonmoving party.  *Tolan*, 134 S. Ct. at

9    1863 (citing *Liberty Lobby*, 477 U.S. at 255).

10    **III.  DISCUSSION**

11    Defendants move for summary judgment on all claims.  Dkt. No. 74.  Preston has

12    alleged (A) a violation of the First Amendment because she alleges the City fired her for

13    her protected speech; and (B) a claim for unlawful retaliation under California Labor Code

14    § 1102.5(b),(c).  For both causes of action, Preston alleges that each of the four incidents

15    recited above resulted in protected speech, and that there was a causal link between her

16    speech and her termination.  The four incidents are: the Rainbow Teen Center Report, the

17    March 6, 2012, City Council meeting, the tentative agreement with Local 55, and the non-

18    collection of union dues.  The Court considers (A) the First Amendment claim; (B) the

19    California Labor Code claims; and (C) the issue of causation.  Within each claim, the

20    Court analyzes all four incidents giving rise to alleged protected speech.

21    **A.    First Amendment Retaliation Claim**

22    A claim for first amendment retaliation requires consideration of a five-factor test

23    outlined in *Dahlia v. Rodriguez*, 735 F.3d 1060, 1067 (9th Cir. 2013).  Those factors are:

24    (1) whether plaintiff spoke on a matter of public concern;

25    (2) whether the plaintiff spoke as a private citizen or public employee;

26    (3) whether the plaintiff's protected speech was a substantial or motivating factor in the

27    adverse employment action;

28    (4) whether the state had adequate justification for treating the employee differently

United States District Court
Northern District of California

1  from other members of the general public; and

2  (5) whether the state would have taken the adverse employment action even absent the

3      protected speech.

4  *Id.* The test under *Dahlia* is cumulative, meaning that all factors are necessary, and failure

5  to meet any one of them is fatal to the plaintiff's case. *Id.* at 1067 n.4. The plaintiff has

6  the burden of proof as to the first three factors, while the burden shifts to the government

7  to prove the last two. *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1103 (9th Cir.

8  2011). The first two factors require the Court to analyze the content and the context of the

9  speech to determine whether it constitutes protected speech, while the next three factors

10 look at the causal relationship between an employee's protected speech and her

11 termination. The Court first considers whether Preston's speech constitutes protected

12 speech. The remaining factors will be analyzed in Section III.C. below.

13     Generally, a public employee's speech is not protected by the First Amendment

14 when it is made pursuant to the employee's official duties. *Garcetti v. Ceballos*, 547 U.S.

15 410, 421 (2006); *Hagen v. City of Eugene*, 736 F.3d 1251 (9th Cir. 2013). To determine

16 whether speech is made pursuant to the employee's official duties, the Court in *Dahlia* set

17 forth three guidelines but no bright line rule. First, the Court can consider whether the

18 speech is made within the plaintiff's chain of command. *Dahlia* at 1074. Second, if the

19 speech reflects broad concerns about corruption or systemic abuse outside professional

20 duties, then it is more likely private speech. *Id.* at 1075. Third, if the speech was made in

21 direct contravention to a supervisor's orders, then it is more likely private speech. *Id.*

22     Because there is no bright line rule and questions of protected speech require

23 examining both the content of the speech and context in which it was spoken, the Ninth

24 Circuit has cautioned that such determinations are best left for a jury. For example, the

25 scope and content of plaintiff's job responsibilities is a question of fact. *Posey v. Lake

26 Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1130-31 (9th Cir. 2008). Additionally,

27 *Dahlia* notes, "the inquiry into the protected status of speech presents a mixed question of

28 fact and law, and specifically that question of the scope and content of a plaintiff's job

1   responsibilities is a question of fact.  Therefore we held that, 'when there are genuine and

2   material disputes as to the scope and content of the plaintiff's job responsibilities, the court

3   must reserve judgment on [whether the plaintiff's speech was pursuant to his official

4   duties] . . . until after the fact-finding process.'" *Dahlia*, 735 F.3d at 1072 (quoting *Posey*,

5   546 F.3d at 1123).  Additionally, the Ninth Circuit said that even though other circuits

6   disagree, "We continue to adhere to our view and note that when an inquiry 'is a mixed

7   question of law and fact, . . . it will often be inappropriate to take the question from the

8   jury.'" *Id.* at n.12 (quoting *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 554 (1997)).

9       Therefore, the Court considers each incident of speech that Preston claims is

10  protected in turn, examining whether there is a material dispute as to the scope of

11  plaintiff's job responsibilities.

### 1.  Rainbow Teen Center Report

13      Defendants argue that preparing a report was part of Preston's job duties and is not

14  protected.  Dkt. No. 74 at 10-11.  Preston contends that her refusal to include language

15  about a violation of the city charter was protected speech.  Dkt. No. 83 at 16-17.

16      When an "employee prepares a routine report, pursuant to normal departmental

17  procedure about a particular incident or occurrence, the employee's preparation of that

18  report is typically within his job duties." *Dahlia*, 735 F.3d at 1075.  However, complaints

19  regarding "broad concerns about corruption or systemic abuse" are unlikely to "be

20  classified as being within the job duties of an average public employee." *Id.*

21      The City argues that Preston admits her duties included drafting and revising

22  agenda reports.  Preston Dep. 191-193.  Preston only communicated her refusal to sign the

23  report to her immediate supervisor, Santana.  Preston Dep. 177.  Additionally, the City

24  argues, City Attorney Barbara Parker added the language to the report that Preston

25  objected to, not Santana.  Preston Dep. 177.  Preston responds that the report was not

26  "routine" because it was an issue of intense public debate.  Dkt. No. 83 at 17.  Preston

27  contends that she believed the accusations against Councilmember Brooks were racially

28  motivated.  Preston Dep. 50, 52, 60.  According to Preston, Santana and Parker discussed

*United States District Court*
*Northern District of California*

1     including the language that Brooks violated the City Charter in order to get rid of Brooks.

2     Preston Dep. 151-152.  Preston believes she was ordered by Santana to include the

3     language and to sign the report.  Preston Dep. 52, 70, 74.  However, Santana concluded

4     that it was not her job, nor did she have the authority, to declare whether a violation of the

5     City Charter occurred.  Santana Dep. 133-134.

6          The Court finds that there is a genuine dispute of material fact as to whether this

7     report was a "routine report, pursuant to normal departmental procedure" and whether

8     Preston's concerns were related to corruption or systemic abuse.  Drawing all inferences in

9     favor of the nonmoving party, the Court concludes that a reasonable jury could find that

10    the Rainbow Teen Center report was not routine, and that making assessments of a

11    councilmember's compliance with local law was not within the scope of Preston's duties.

12    Therefore, the Court denies summary judgment as to this issue.

13                    **2.  March 6, 2012, City Council Meeting**

14         Defendants argue that Preston was acting within the scope of her duty as Employee

15    Relations Director when she testified about the RTC on March 6, 2012.  Dkt. No. 74 at 12.

16    Defendants note that Preston's statements were related to her job duties, preparing a report

17    about the RTC.  *Id.*  Preston argues that Santana asked her to "confirm" Santana's false

18    statement that Brooks was informed about RTC staffing choices.  Dkt. No. 83 at 18.

19    Preston argues that the City Council is outside her chain of command, so her disclosure to

20    it that Santana's statement was false is protected speech.  *Id.*

21         "When a public employee raises complaints or concerns up the chain of command

22    at his workplace about his job duties, that speech is undertaken in the course of performing

23    his job."  *Dahlia*, 735 F.3d at 1074.  Whether an employee expresses her views inside the

24    office rather than publicly is not dispositive.  *Garcetti*, 547 U.S. at 421.  However,

25    "[s]peech which owes its existence to an employee's professional responsibilities is not

26    protected by the First Amendment."  *Hagen*, 736 F.3d at 1258.  In *Freitag v. Ayers*, 468

27    F.3d 528, 544 (9th Cir. 2006), the Ninth Circuit held that where a prison official made

28    internal reports of inmate sexual misconduct, she spoke as a public employee and the

speech was unprotected.  However, when she made external reports about the same circumstances to a state senator and the state inspector general, she acted as a citizen and the speech was protected.  *Id.*

Preston acknowledges that overseeing the staffing of the Rainbow Teen Center is part of her professional duties.  Preston Dep. 191.  During the City Council meeting, Santana called Preston to the microphone to "confirm" the contents of a meeting between city officials and Brooks about staffing of the RTC.  Preston Dep. 118.  Preston went to the microphone, and discussed the contents of what occurred at the meeting.  Preston Dep. 118.

The Court finds that Preston was speaking as a public official, on official business. She attended the City Council meeting as part of her job duties.  Preston was called to the microphone as a public official to discuss the contents of a meeting that she attended in her professional capacity.  Although a reasonable juror could infer that Preston did contradict Santana, her speech at the City Council meeting owes its existence to her position with the city.  Therefore, the Court concludes that Preston's First Amendment claim is precluded as a matter of law and grants summary judgment as to this issue.

### 3.  Tentative Collective Bargaining Agreement

Defendants argue that Preston's reporting of Reed's actions was within her job duties, and thus not protected speech.  Dkt. No. 74 at 13.  Additionally, defendants argue that Preston did not report Reed's acts to anyone outside her chain of command.  *Id.* at 14. Preston argues that Santana ordered her to ignore the lack of City Council authorization. Dkt. No. 83 at 19.  Preston also argues that she was reporting about a systemic problem, that Reed was entering into agreements without authorization.  *Id.*  Finally, Preston argues that she reported her concerns to the City Attorney and Councilmember Brooks, both of whom were not in her chain of command.  *Id.*

In *Marable v. Nitchman*, 511 F.3d 924, 927 (9th Cir. 2007), the Court clarified when reporting corruption or systemic abuse falls within an employee's job description. There, "a ship engineer complained of corruption by the manager of the Washington State

1   Ferries." *Id.* (summarized by *Hagen v. City of Eugene*, 736 F.3d 1251, 1259 (9th Cir.

2   2013)).  The Ninth Circuit found "that *Garcetti* was inapplicable because it was not part of

3   a ship engineer's assigned duties to complain about corrupt conduct of his supervisors."

4   *Id.* at 1259.

5       Preston acknowledges that her job of supervising employee relations unit included

6   collective bargaining and meet-and-confer sessions.  Preston Dep. 185.  In addition,

7   negotiating with unions was part of her job duties.  Preston Dep. 80.  Preston reported the

8   unauthorized tentative agreement to Santana, City Attorney Parker, and Councilmember

9   Brooks.  Preston Dep. 126-27.  The City Administrator and City Attorney are responsible

10  for setting the closed session agenda.  Preston Dep. 126-27.  The parties dispute what

11  Santana's reaction was to Preston's disclosure of the unauthorized agreement.  The Court

12  finds that drawing all inferences in favor of Preston, a reasonable jury could find that

13  Santana failed to respond appropriately to Preston's complaints.  Therefore, Preston's

14  report to Parker and Brooks could have been beyond her assigned duties.  Thus, the Court

15  denies summary judgment as to this issue.

16          **4.  Non-collection of Union Dues**

17      Defendants argue that Preston's report of the non-collection of union dues was

18  made as part of her official duties.  Dkt. No. 74 at 15.  Preston argues that she reported the

19  grievance to Deputy Mayor Sandre Swanson who was not in her chain of command, and

20  that she was ordered not to tell the City Council about the grievance.  Dkt. No. 83 at 20.

21      In *Dahlia*, the Ninth Circuit concluded that "when a public employee speaks in

22  direct contravention to his supervisor's orders, that speech may often fall outside of the

23  speaker's professional duties."  735 F.3d at 1075.  The Court continued, "Even assuming

24  *arguendo* that Dahlia might normally be required to disclose misconduct pursuant to his

25  job duties, here he defied, rather than followed, his supervisors' orders."  *Id.*  Therefore,

26  even if one of Preston's job duties was to report grievances, if Preston defied Santana's

27  order not to report this grievance, Preston's speech may be protected.

28      Preston testified that her unit, the Employee Relations Unit, is the only one

United States District Court
Northern District of California

Case No. 14-cv-02022 NC          13

1   authorized to engage in collective bargaining.  Preston Dep. 187.  Preston reported the

2   grievance to both Santana and Deputy Mayor Sandre Swanson.  Preston Decl. ¶ 13.

3   Additionally, she was taken off the investigation, but she continued to follow up.  Preston

4   Decl. ¶¶ 13, 17.  Preston testified that Santana ordered her not to tell the City Council

5   about the grievance, but that she believed lying to the City Council would be a violation of

6   law.  Preston Dep. 209.  Drawing all inferences in favor of the nonmoving party, the Court

7   finds there is a genuine dispute of material fact whether Preston was acting within the

8   scope of her job and whether she was reporting issues of broad systemic corruption.

9   Additionally, there is a genuine dispute of material fact whether Preston was defying a

10  direct order from Santana not to disclose the grievance to the City Council.  Thus, the

11  Court denies the motion for summary judgment as to this issue.

12      **B.    California Labor Code Claim**

13          Preston's second claim is brought under California Labor Code §§ 1102.5(b),(c),

14  which provides in relevant part:

15          (b) An employer, or any person acting on behalf of the employer, shall not retaliate

16              against an employee for disclosing information . . . if the employee has

17              reasonable cause to believe that the information discloses a violation of state or

18              federal statute, or a violation of or noncompliance with a *local*, state, or federal

19              rule or regulation, regardless of whether disclosing the information is part of the

20              employee's job duties.

21          (c) An employer, or any person acting on behalf of the employer, shall not retaliate

22              against an employee for refusing to participate in an activity that would result in

23              a violation of state or federal statute, or a violation of or noncompliance with a

24              *local*, state, or federal rule or regulation.

25          The law stated above is the version of the Labor Code which was revised on

26  January 1, 2014, to include protection for speech about violations of "local law" (revision

27  in italics).  The previous version, which was in effect from January 1, 2004, through

28  December 31, 2014, prohibits retaliation against an employee who disclosed information

1   about, or refused to participate in, violations of only state and federal law.  The events

2   alleged in the complaint predate the 2014 version of the law; therefore, the Court must

3   decide which version of the law is applicable to Preston's claims.

4       Defendants argue that the law should not apply retroactively because there is no

5   legislative intent to do so.  Dkt. No. 74 at 17.  Citing to *McClung v. Employment Dev.*

6   *Dep't*, 34 Cal. 4th 467, 471-75 (2004), defendants argue that the Court can only apply a

7   law retroactively if there is clear and unavoidable implication of legislative intent, which

8   here there is not.  Plaintiff does not address this argument in her opposition papers, but in

9   application, only relies on violations of "state and federal law" without mentioning local

10  law.  The Court agrees with defendants that the 2014 statute does not demonstrate

11  legislative intent to apply the law retroactively.  Therefore, the Court considers the pre-

12  2014 version of California Labor Code §§ 1102.5(b),(c).

13      A prima facie case of employment retaliation under California Labor Code § 1102.5

14  requires plaintiff to demonstrate that she was subjected to adverse employment action after

15  engaging in protected activity, and that there was a causal connection between the two.

16  *Edgerly v. City of Oakland*, 211 Cal. App. 4th 1191, 1199 (2012).  An employee engages

17  in protected activity when she "discloses to a governmental agency reasonably based

18  suspicions of *illegal activity*."  *Mokler v. County of Orange*, 157 Cal. App. 4th 121, 138

19  (2007) (italics in original).  The employee must "reasonably believe . . . he was disclosing

20  a violation of state or federal law."  *Patten v. Grant Joint Union High Sch. Dist.*, 134 Cal.

21  App. 4th 1378, 1384 (2005).  "To have a reasonably based suspicion of illegal activity, the

22  employee must be able to point to some legal foundation for his suspicion—some statute,

23  rule or regulation which may have been violated by the conduct he disclosed."  *Fitzgerald*

24  *v. El Dorado Cnty.*, 12-cv-02932 KJN, 2015 WL 966133, at *13 (E.D. Cal. Mar. 3, 2015)

25  (citing *Love v. Motion Indus., Inc.*, 209 F. Supp. 2d 1128, 1135 (N.D. Cal. 2004)).  As with

26  the First Amendment issue, the Court will first consider whether Preston engaged in

27  protected activity, and then address the causal connection in Section III.C.

28  /

1                **1.    Rainbow Teen Center Report**

2            Defendants argue that Preston's labor code claim fails because (1) there is no

3 evidence that the edits made to the RTC report violated a law; and (2) Preston is not an

4 attorney and does not know whether a violation of § 218 had occurred. Dkt. No. 74 at 18.

5 Preston contends that she had a reasonable belief that Santana was breaking federal and

6 state laws against racial discrimination by targeting Brooks in the RTC report. Dkt. No. 83

7 at 21. Preston points to a later City Council meeting where several Council members

8 stated that they had all violated § 218, and it was inappropriate to attack only Brooks.

9 Preston Dep. 153. Preston need only have a reasonable belief that if she participated in the

10 activity, it would constitute a violation of law. Drawing all inferences in favor of the

11 nonmoving party, Preston's testimony demonstrates that a reasonable jury could find that

12 she reasonably believed that the language about a violation of § 218 was included for

13 improper purposes. Preston believed that if she participated in including the language in

14 the RTC report, without knowledge of whether Brooks in fact violated the charter, she

15 would be committing a violation of law. Preston Decl. ¶ 4. Therefore, a genuine dispute

16 of material fact remains and summary judgment is denied.

17                **2.    March 6, 2012, City Council Meeting**

18            Defendants contend that Santana did not call on Preston specifically to lie or violate

19 state or federal law by falsely testifying. Dkt. No. 74 at 18. In addition, Santana does not

20 believe that Preston contradicted her. Santana Dep. 142-147. Preston argues that she had

21 reasonable cause to believe that lying to the City Council would be a violation of state laws

22 against fraud. Dkt. No. 83 at 21-22. Preston argues that by asking her to "confirm" the

23 facts of the meeting between Brooks and Santana, Santana was asking Preston to lie. *Id.*

24 Drawing all inferences in favor of the nonmoving party, the Court finds that a reasonable

25 jury could conclude that Santana's request for Preston to "confirm" the details was an

26 order to lie to the City Council. Preston's deposition demonstrates that she believed it

27 would be a violation of state law to lie at a City Council meeting. Preston Dep. 118.

28 Therefore, there is a genuine dispute of material fact. The Court denies summary

United States District Court
Northern District of California

1    judgment as to this issue.

### 3.    Tentative Collective Bargaining Agreement

The defendants argue that Preston admits the collective bargaining agreement was entered into in violation of local law, not state or federal law.  Dkt. No. 74 at 19. Therefore, it is not a violation of the California Labor Code.  *Id.*  Preston argues that she had reasonable cause to believe the unauthorized bargaining violated City Ordinance 12903 and Cal. Gov't Code § 3505 as an unfair labor practice.  Dkt. No. 83 at 22.  The Court finds that there is a dispute of fact as to whether Preston reasonably believed the collective bargaining agreement was a violation of state law.  Therefore, the Court denies summary judgment as to this issue.

### 4.   Non-collection of Union Dues

Defendants argue that Kasaine did not violate a California law and Preston's reporting of the grievance to the City Council was not a disclosure of unlawful activity. Dkt. No. 74 at 19.  Preston responds that she believed Kasaine was violating California Government Code § 3506.  Dkt. No. 83 at 22; Preston Decl. ¶ 12.  Additionally, Preston believed that it would be a violation of law to lie to the City Council.  *Id.*  Drawing all inferences in favor of the nonmoving party, the Court finds that a reasonable jury could conclude that Preston reasonably believed she was disclosing a violation of federal law.  A reasonable jury could also find that Preston believed she would be committing a violation of law if she did not answer Brooks' question truthfully.  Summary judgment is denied as to this issue.

### C.    Causal Relationship

First Amendment and California Labor Code claims require a casual link between alleged protected activity and the defendants' adverse employment action.  *Eng v. Cooley*, 552 F.3d 1062, 1071 (9th Cir. 2009); *Morgan v. Regents of Univ. of Cal.*, 88 Cal. App. 4th 52, 69 (2000).  Generally, causation is a "question of fact that must be decided in light of the timing and surrounding circumstances."  *Eng*, 552 F.3d at 1071.  A plaintiff can demonstrate causation in three ways: (1) proximity in time between the protected speech

United States District Court
Northern District of California

1   and the retaliatory employment decision; (2) evidence that the employer expressed

2   opposition to employee's speech, either to employee or others; or (3) evidence that

3   employer's proffered explanations for the adverse action were false and pre-textual.

4   *Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003).

5       On the first factor, there is no bright line rule on when is too long to establish

6   proximity in time. *Id.* at 977-78. "Depending on the circumstances, three to eight months

7   is easily within a time range that can support an inference of retaliation." *Id.* at 977. "[A]n

8   eleven-month gap in time is within the range that has been found to support an inference

9   that an employment decision was retaliatory." *Allen v. Irano*, 283 F.3d 1070, 1078 (9th

10   Cir. 2002).

11       Here, Preston argues that Santana terminated her less than 40 hours after Preston

12   revealed the SEIU grievance to the City Council. Dkt. No. 83 at 24. The first instances of

13   protected speech that Preston alleges led to her termination was the Rainbow Teen Center

14   Report leading up to the March 6, 2012 City Council meeting. Although Preston was not

15   terminated until October 2013, drawing all inferences in favor of the nonmoving party,

16   Preston's testimony sets out that her relationship with Santana began to deteriorate as a

17   result of her alleged protected speech. Preston Dep. 115; Preston Decl. ¶ 6. Additionally,

18   the Court finds that Preston's termination was so close in time to her speech about the

19   SEIU grievance that a reasonable jury could infer causation. Therefore, the Court finds

20   that drawing all inferences in favor of Preston, she has sufficiently demonstrated causation.

21       A defendant may avoid liability for retaliation by showing that it would have

22   reached the same adverse employment decision even in the absence of the employee's

23   protected conduct. *Eng*, 552 F.3d at 1072; *Mokler v. Cnty. of Orange*, 157 Cal. App. 4th

24   121, 138 (2007). Defendants argue that (1) Santana decided to terminate Preston before

25   her alleged protected speech; and (2) Preston would have been terminated regardless for

26   failure to properly execute her job duties. Dkt. No. 74 at 21-23.

27   **1. Timing of Termination Decision**

28       Santana testified that she first contemplated terminating Preston in February or

Case No. 14-cv-02022 NC          18

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14

March 2013 because Preston destroyed a written statement prepared by a City employee for an investigation being initiated by the Human Resources department.  Santana Dep. 17-18.  Santana spoke with former mayor Jean Quan about hiring a new Employee Relations Director.  Quan Decl. ¶ 2.  Santana made the decision to terminate Preston in June 2013 and informed Mayor Quan of this decision.  Santana Dep. 27.  Preston responds that she was not terminated until October 2013, and less than 40 hours after she defied Santana's order not to disclose the SIEU grievance to the City Council.  Dkt. No. 83 at 23-24.  Additionally, Preston states that Santana did not provide any reasons for terminating Preston.  *Id.*  Finally, Preston points to a series of acts that Santana took that demonstrate malicious intent.  Starting in June or July 2013, Santana accessed Preston's computer to track Preston's emails.  Santana Dep. 31-32.  Preston argues that Santana did not obtain authorization to track her emails, and that Santana's intent was malicious.  Dkt. No. 83 at 24.  The Court finds that there is a question of fact as to Santana's intent in terminating Preston, which should be left for a jury to determine.

### 2.  Reason for Termination

15
16
17
18
19
20
21
22
23

Defendants argue that Preston would have been terminated for failure to properly execute her job duties.  Dkt. No. 74 at 22-23.  The City sets forth a variety of reasons to demonstrate that Preston was not performing her job duties.[8]  Preston responds that she was not informed of these reasons before her termination.  Dkt. No. 25.  Preston presented the testimony of various colleagues and Deputy Mayor Sandre Swanson that attests to her good work performance.  Ewell Dep. 66-67; Lara Dep. 73-75; Dkt. No. 85, Swanson Decl. ¶ 6.  The Court concludes that both sides have presented evidence, which demonstrates that there is a genuine dispute of material fact as to why Preston was terminated.

### IV.  CONCLUSION

24
25
26

In conclusion, the Court GRANTS defendants' summary judgment as to Preston's First Amendment claim about the March 6, 2012, City Council meeting.  On all other

27
28

---

[8] Dkt. No. 80, Exhibit E: defendants' supplemental response to plaintiff's special interrogatories, set one, No. 2.

1   issues presented, the Court DENIES defendants' summary judgment motion.  The Court

2   finds that drawing all inferences in favor of the plaintiff, there are genuine disputes of

3   material facts suitable for determination by a jury.

4          Additionally, defendants objected to several pieces of evidence presented with

5   plaintiff's opposition briefing.  Dkt. No. 89.  Because that evidence was not necessary for

6   the Court to reach its conclusion, the Court does not rule on the objections at this time.

7          The Court has already issued a pretrial order detailing what the parties must prepare

8   for trial.  Dkt. No. 98.  The parties are reminded that if they wish this case to be referred to

9   a magistrate judge for a settlement conference before trial, they must file a request for

10  referral by July 27, 2015.

11         **IT IS SO ORDERED.**

12  Dated:  July 23, 2015                      _____

13                                             NATHANAEL M. COUSINS
                                               United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 14-cv-02022 NC              20