UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARYELLE LAWANNA PRESTON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF OAKLAND, DEANNA SANTANA,<br><br>　　　　Defendants. | Case No. 14-cv-02022-NC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR A DIRECTED VERDICT** |

Plaintiff Daryelle Lawanna Preston presented her case at trial from September 14-18, 2015. After Preston rested her case, defendants Deanna Santana and the City of Oakland moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). The Court heard arguments from both parties and granted Santana's motion on the First Amendment claim, finding that Preston's claim was precluded as a matter of law because all of her alleged protected speech owed its existence to her position as Employee Relations Director for the City of Oakland. The Court took the City of Oakland's motion on the California Labor Code claim under submission.

Therefore, at trial, the defense's case was limited to the California Labor Code claim, and the jury was not instructed on the First Amendment claim. On September 23, 2015, the jury returned a verdict in Preston's favor on the California Labor Code claim and awarded her damages against Oakland in the amount of $613,302.

The Court now sets forth in further detail its ruling on the First Amendment claim,
Case No. 14-cv-02022 NC

and DENIES the City of Oakland's motion for a directed verdict on the California Labor Code claim.

## I.   BACKGROUND

### A.   Claims

The general facts are set forth in detail in the Court's order on summary judgment, Dkt. No. 99. In short, Preston was appointed to be the Employee Relations Director for the City of Oakland by defendant Deanna Santana in January 2012. On October 3, 2013, Santana fired Preston. Preston alleges that her termination was unlawful because (1) it was a violation of her right to free speech under the First Amendment; and (2) it was unlawful retaliation for Preston's reporting of unlawful acts under the California Labor Code § 1102.5. Preston's claims are premised on four incidents, which she alleges constituted protected acts and/or refusals to participate in unlawful activity:

(1) Preston claims that she refused to add language to the Rainbow Teen Center report, referring Desley Brooks for prosecution, because she believed that doing so would be illegal racial discrimination;

(2) Preston claims that she refused to confirm Santana's statement to Councilmember Desley Brooks at the March 6, 2012, City Council meeting, because she believed that doing so would be committing perjury;

(3) Preston claims that she disclosed that the City of Oakland was entering into contracts with Firefighters' Local 55 without the necessary approval from City Council, because she believed that doing so would be a violation of the California Government Code; and

(4) Preston claims that she disclosed that the City of Oakland was failing to collect temporary part-time employees' union dues, because she believed that the failure was a violation of the California Government Code. Preston brings these claims under both the First Amendment, alleging that her acts were protected speech, and also the California Labor Code § 1102.5.

**B.     Preston's Relevant Testimony**

Preston testified that she was hired by the City of Oakland in 2007 to clean up employee problems. Transcript 628. Once she was promoted in 2012 by Santana, she became the Employee Relations Director and headed the Employee Relations Unit. Transcript 633. According to Preston, "the Employee Relations Unit was responsible for bargaining, and the Employer Relations Unit reported and took direction from the City Administrator." Transcript 638.

As to the Rainbow Teen Center draft report, Preston testified that Santana asked her to investigate the Center and prepare a report for the City Council, specifically looking into the employee hiring process. Transcript 638. Preston verified that she signed the completed report, in plaintiff's Exhibit 8. Transcript 639.

On the June 2013 firefighter's union memorandum of understanding ("MOU"), Preston testified that she was notified that her staff member had engaged in signing an improper agreement. Transcript 651. Preston testified that she sent an email, Exhibit 20, to the City Attorney to ask for a legal opinion of whether signing the MOU to extend the paramedic program was proper. Transcript 653. Additionally, Preston called Santana to notify her of the improper labor negotiations. Transcript 656.

On the October 1, 2013, closed session of City Council, Preston reported that the City was failing to collect part time temporary employee union dues. Transcript 680. Preston testified that she attended closed sessions when labor relations were on the agenda as part of her job duties. Transcript 661. Preston testified that it was part of her job duties to keep track of grievances filed by the unions. Transcript 667. As to that grievance, Preston testified that she believed it was her responsibility as Employee Relations Director to conduct an investigation to determine if the allegations in the grievance were true. Transcript 668. Preston testified that she attended the closed session City Council meeting and was giving a presentation on the status of bargaining the part-time SEIU MOU. Transcript 680.

## II. LEGAL STANDARD

"If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 50(a). "[T]he trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## III. DISCUSSION

### A. First Amendment Claim

A claim for first amendment retaliation requires consideration of a five-factor test outlined in *Dahlia v. Rodriguez*, 735 F.3d 1060, 1067 (9th Cir. 2013). Those factors are:

   a. whether plaintiff spoke on a matter of public concern;
   b. whether the plaintiff spoke as a private citizen or public employee;
   c. whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action;
   d. whether the state had adequate justification for treating the employee differently from other members of the general public; and
   e. whether the state would have taken the adverse employment action even absent the protected speech.

*Id.* The test under *Dahlia* is cumulative, meaning that all factors are necessary, and failure to meet any one of them is fatal to the plaintiff's case. *Id.* at 1067 n.4. The plaintiff has the burden of proof as to the first three factors, while the burden shifts to the government to prove the last two. *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1103 (9th Cir. 2011). The first two factors require the Court to analyze the content and the context of the speech to determine whether it constitutes protected speech, while the next three factors look at the causal relationship between an employee's protected speech and her

Case No. 14-cv-02022 NC                    4

1    termination.  At issue in this motion is whether Preston's speech constitutes speech as a
2    private citizen, as required under the second element of the *Dahlia* test.
3         Generally, a public employee's speech is not protected by the First Amendment
4    when it is made pursuant to the employee's official duties.  *Garcetti v. Ceballos*, 547 U.S.
5    410, 421 (2006); *Hagen v. City of Eugene*, 736 F.3d 1251 (9th Cir. 2013).  To determine
6    whether speech is made pursuant to the employee's official duties, the Court in *Dahlia* set
7    forth three guidelines but no bright line rule.  First, the Court can consider whether the
8    speech is made within the chain of command.  *Dahlia* at 1074.  Second, if the speech
9    reflects broad concerns about corruption or systemic abuse outside professional duties,
10   then it is more likely private speech.  *Id.* at 1075.  Third, if the speech was made in direct
11   contravention to a supervisor's orders, then it is more likely private speech.  *Id*.
12        "When a public employee raises complaints or concerns up the chain of command
13   at his workplace about his job duties, that speech is undertaken in the course of performing
14   his job."  *Id.* at 1074.  Whether an employee expresses her views inside the office rather
15   than publicly is not dispositive.  *Garcetti*, 547 U.S. at 421.  However, "[s]peech which
16   owes its existence to an employee's professional responsibilities is not protected by the
17   First Amendment."  *Hagen*, 736 F.3d at 1258.  In *Freitag v. Ayers*, 468 F.3d 528, 544 (9th
18   Cir. 2006), the Ninth Circuit held that where a prison official made internal reports of
19   inmate sexual misconduct, she spoke as a public employee and the speech was
20   unprotected.  However, when she made external reports about the same circumstances to a
21   state senator and the state inspector general, she acted as a citizen and the speech was
22   protected.  *Id.*  "While the question of the scope and content of a plaintiff's job
23   responsibilities is a question of fact, the ultimate constitutional significance of the facts as
24   found is a question of law."  *Eng*, 552 F.3d at 1071.
25        The Court previously determined that the March 6, 2012, City Council meeting
26   speech cannot be a basis for protected First Amendment speech because Preston was
27   speaking as a public official, on official business.  Dkt. No. 99.  The Court similarly finds
28   that the three other instances of alleged protected speech all owe their existence to

1   Preston's job duties.  As to the Rainbow Teen Center report, Preston testified that she was
2   asked to investigate and prepare the report as part of her job duties.  As to the firefighter's
3   union MOU, Preston testified that it was her job to ensure that all labor negotiations were
4   occurring in compliance with city regulations.  As to the temporary, part-time union dues
5   reporting, Preston stated that she was promoted to Employee Relations Director to help
6   "clean up" the City of Oakland's internal operations with respect to labor relations.
7   Additionally, Preston attended the October 1, 2013, closed session City Council meeting in
8   her official capacity as Labor Relations Director.  Therefore, all Preston's actions were
9   conducted as part of her official duties.

10   The Court is guided by *Hagen*'s conclusion that when an employee has an official
11   duty to report safety concerns, or in this case, noncompliance with local and state laws, the
12   speech is not protected.  *Hagen*, 736 F.3d at 1258.  Additionally, when the speech was a
13   product of "performing the tasks the employee was paid to perform," then it is not private
14   speech.  *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1058-59 (9th Cir. 2013).
15   Therefore, construing the evidence in the light most favorable to Preston, the evidence
16   presented "permits only one reasonable conclusion," *Omega,* 127 F.3d at 1161, that
17   Preston's acts were performed as part of her official duties and not as a private citizen.

18   **B.   Labor Code Claim**

19   A prima facie case of employment retaliation under California Labor Code § 1102.5
20   requires plaintiff to demonstrate that she was subjected to adverse employment action after
21   engaging in protected activity, and that there was a causal connection between the two.
22   *Edgerly v. City of Oakland*, 211 Cal. App. 4th 1191, 1199 (2012).  An employee engages
23   in protected activity when he "discloses to a governmental agency reasonably based
24   suspicions of *illegal activity*."  *Mokler v. County of Orange*, 157 Cal. App. 4th 121, 138
25   (2007) (italics in original).  The employee must "reasonably believe . . . he was disclosing
26   a violation of state or federal law."  *Patten v. Grant Joint Union High Sch. Dist.*, 134 Cal.
27   App. 4th 1378, 1384 (2005).  "To have a reasonably based suspicion of illegal activity, the
28   employee must be able to point to some legal foundation for his suspicion—some statute,

Case No. 14-cv-02022 NC            6

rule or regulation which may have been violated by the conduct he disclosed." *Fitzgerald v. El Dorado Cnty.*, 12-cv-02932 KJN, 2015 WL 966133, at *13 (E.D. Cal. Mar. 3, 2015) (citing *Love v. Motion Indus., Inc.*, 209 F. Supp. 2d 1128, 1135 (N.D. Cal. 2004)).

Under the California Labor Code claim, a disclosure is protected even though disclosing the information may be part of Preston's job duties. "[I]t cannot categorically be stated that a report to a supervisor in the normal course of duties is not a protected disclosure." *Mize-Kurzman v. Marin Cmty. Coll. Dist.*, 202 Cal. App. 4th 832, 858 (2012). Therefore, the Court's concerns above that Preston's actions were part of her job duties is not applicable to this claim. In the absence of such concerns, the Court finds that there is sufficient evidence for a jury to find for Preston on the California Labor Code claim.

## IV. CONCLUSION

In conclusion, the Court GRANTS defendants' motion for a directed verdict as to the First Amendment claim against Santana, finding such claim is barred as a matter of law. The Court DENIES defendants' motion as to the California Labor Code claim because Preston's acts can be protected even if performed pursuant to her job duties.

**IT IS SO ORDERED.**

Dated: September 30, 2015

_____
NATHANAEL M. COUSINS
United States Magistrate Judge